Sharpe v. Johnston, et al.

JOHN W. SHARPE, Respondent, *vs.* JAMES JOHNSTON, *et al.*, Appellants.

1. *Malicious prosecution—Malice and want of probable cause must co-exist—Former may be inferred from latter, in what sense.*—Malice and want of probable cause must co-exist in order to warrant an action for malicious prosecution, and malice may be inferred from want of probable cause. But by that statement is meant merely that malice may be inferred from the facts which go to establish want of probable cause, without direct and positive proof of malice. The latter, however, is not to be inferred absolutely, as a matter of law, merely from proof of the former, but only where the facts, showing want of probable cause, are of a character such as warrant the inference of malice.

2. *Probable cause question of mixed law and fact—When and how to be determined by the jury.*—What is probable cause, is a mixed question of law and fact. Where the facts are undisputed, the court should declare their legal effect; but when disputed, the question is, under proper instructions, for the jury.

3. *Action for malicious prosecution—Instruction as to verdict of "innocent" in the indictment.*—In suit for malicious prosecution, the court may instruct the jury that a verdict for plaintiff, in the criminal proceeding against him, establishes his innocence of the charge; certainly where the jury are further told that the question for them to determine by their verdict, is not the guilt or innocence of plaintiff, but whether defendant acted maliciously and without probable cause in instituting the prosecution.

4. *Action for malicious prosecution—"Probable cause"—Advice of counsel—What facts must be communicated.*—The advice of counsel to institute a criminal prosecution will not constitute a "probable cause" therefor, when the client resorts to such advice only as a cloak for his malice. He must consult counsel in good faith, and not only learn all the ascertainable facts, bearing upon the supposed offence, but communicate them, however immaterial he may deem them to be, to his legal adviser.

5. *Partnership settlement—Drafts and notes paid over in—Partner paying, subsequently employed as collector of—Property unsold, share in retained by members—Embezzlement of proceeds of collections.*—Where, in the settlement of a partnership, all the losses and expenses of the business are adjusted, and a balance struck, and one receives from the other, as cash, certain drafts and notes, the partnership is none the less ended and the settlement none the less final because the party turning over the paper is to be responsible for his proportion of the debts uncollected thereon; and none the less so because he is subsequently employed in making the collections. He would have no continuing property, as partner, in the drafts and notes. Nor is the partnership continued by reason of the fact that certain specific property of the firm remained unsold, and under the settlement, each retains his proportionate share therein. Under such circumstances, the one employed as collector may be held criminally for embezzlement of proceeds of such drafts or notes converted to his own use.

6. *Partnership—Particular transaction between partners may be taken out of general law of partnership.*—Partners may insulate or segregate any particular

transactions from the general business of the firm, and thus take them out of the general law of partnership.

7. *Malicious prosecution—Action of damages for—Probable cause—Advice of counsel need not be to bring prosecution.*—In an action of damages for criminal prosecution, defendant may show "probable cause" for the prosecution in the giving of an opinion by his counsel, that plaintiff was liable to such prosecution, without proving further that counsel had advised him to bring the prosecution.

*Appeal from St. Louis Circuit Court.*

*Henderson & Shields*, for Appellants.

I. The 1st and 12th instructions given for plaintiff are erroneous because they are mere abstract propositions of law, and tend to mislead the jury. The issue was not the guilt or innocence of plaintiff, but whether, from all the facts and circumstances connected with the matter, the defendants had reasonable cause to believe him guilty. (Fitzgibbon vs. Brown, 43 Me., 169, 174; Ross vs. Jones, 26 Ill., 259; Hayes vs. Blizzard, 30 Ind., 457; Seibert vs. Brown, 5 Watts & S., 438; Scanlon vs. Curly, 9 Abb. Pr. [N. Y.] 94.)

II. The 2d instruction given for plaintiff is erroneous, because it submitted the question whether there was probable cause, to the jury. That is a mixed question of law and fact. The jury must pass upon the existence of the facts, and the court must declare, as a matter of law, whether they do, or do not constitute probable cause. The instruction is misleading, because it leaves no alternative to the jury but to infer malice from want of probable cause, if they find no probable cause exists. While they jury may so infer, if the facts justify such inference, the finding of probable cause does not necessarily carry with it malice in fact, and no inference of malice arises therefrom as a matter of law. (Ammerman vs. Crosby, 26 Ind., 456; Beale vs. Robertson, 7 Ired., 280–2–3; Wade vs. Walden, 23 Ill., 425; Israel vs. Brooks, 23 Ill., 575; Diggs vs. Hurton, 44 Vt., 147; Deitz vs. Langfelt, 63 Penn. St., 234–40; Whitefield vs. Westbrook, 40 Miss., 311–17; Greenwade vs. Mills, 31 Miss., 464; Boyd vs. Cross, 35 Md., 194–97; Vanderbuilt vs. Mathis, 5 Duer, 304–9; see also, Harkroder vs. Moore, 44 Cal., 144; Levy vs. Brannan,

39 Cal., 485; Humphreys vs. Parker, 52 Me., 502; Buckley vs. Smith, 2 Duer, 261-71; 13 Gray, 201.)

III. The finding of an indictment by a grand jury is *prima facie* evidence of probable cause, and imposes the burden of proving express malice upon plaintiff. (Garrard vs. Gillett, 4 J. J. Marsh., 629; Brown vs. Griffen, Cheves [South Carolina], 32; Golding vs. Crowle, Sayer R., [K. B.] p. 1.)

IV. The 9th instruction given for plaintiff is erroneous. Community of loss, as well as profit, is a necessary ingredient of a partnership *inter partes ;* or the parties must share in the capital stock, and in the profits, as principals. (Lamb vs. Grover, 47 Barb., 317; Loomis vs. Marshall, 12 Conn., 77; Buckle vs. Eckhart, 1 Denio, 337; Buckle vs. Eckhart, 3 Comst., 132; Lewis vs. Greider, 51 N. Y., 236; McCauley adm'r vs. Cleveland, 21 Mo., 438; Meyers vs. Field, 37 Mo., 434; Whitehall vs. Shickle, 43 Mo., 537; Champion vs. Bostwick, 18 Wend., 175; Vanderburgh vs. Hull, 20 Wend., 70; Muzzy vs. Whitney, et al., 10 Johns, 226; 54 Eng. Com. Law, 32; 1 Smith Lead. Cas. 726; 4 East, 144; 3 Kent, 34; Story Part., §§ 34 to 48; Campbell vs. Dent, 54 Mo., 325.)

V. The 10th instruction given for plaintiff is erroneous in its statements as to the accounting, as all the facts therein cited may exist and yet it be a final accounting of the partnership affairs. The balance of $968 was secured by plaintiff to defendants by deed of trust. Plaintiff was liable on the notes only in the contingency of their not being collected. It was an individual liability as guarantor. The only joint property was the mule sheds, for his interest in which, plaintiff could have had his action at law against defendants. (Byrd vs. Fox, 8 Mo., 574 and Buckner vs. Ries, 34 Mo. 357.)

The 11th instruction given for plaintiff is erroneous. Admitting there was a partnership, admitting there was a partial settlement only, there was no contradiction of the fact that the draft of Stewart was turned over as cash to McPike, Johnston & Co. by plaintiff, and that he afterwards received the same for collection from them, and to be collected for their

benefit and on their account. The division of partnership property among the partners severs the unity, and it becomes individual property, even though the partnership is not finally settled. One partner can sue another partner collecting the proceeds of any such property so turned over, to the first, at law, for conversion, and recover on his individual account. Why then cannot such severed property be the subject of embezzlement under our statute? The object of this instruction was to make prominent the idea that plaintiff had an interest in the Stewart draft, hence the 13th instruction, given for plaintiff, was asked. Both these instructions were erroneous, (assuming that a partnership existed) in that they negatived any idea of a severance of the unity of any of the partnership property during the existence of the partnership. (Dakin vs. Grimes, 48 N. H., 48; Crosby vs. Nichols, 3 Bosw., 450–454; Seamon vs. Johnson, 46 Mo., 111; Parsons on Partnership, 276; Adams Eq., 239; Whitehill vs. Shickle, 43 Mo., 543; Russell vs. Grimes, 46 Mo., 410; Vanness vs. Forrest, 8 Cranch, 30; Smith vs. Lusher, 5 Cowen, 688; Henly vs. Soper, 8 Barn & Cres, 16; Gibson vs. Moore. 6 N. H., 547; Preston vs. Stratton, 1 Anst., 50; 2 Mann & Ryl., 153.)

VI. The 3d instruction for defendants given by the court, at its own instance, was wrong. Defendant need not show that counsel advised the prosecution, in order to show probable cause; all that is necessary, is advice from counsel that in the given state of facts, plaintiff is guilty, or legally liable to a criminal prosecution. (Collins vs. Hoyte, 50 Ill., 337–351; Same case, 50 Ill., 353–354; Scotten vs. Longfellow, 40 Ind., 23; Potter vs. Scale, 8 Cal., 217; Fisher vs. Fireste, 33 Penn. St., 501; Stevens vs. Fassett, 27 Me., 266; Walter vs. Sample, 25 Penn. St., 275–77; Williams vs. Van Meter, 8 Mo., 343; Blunt vs. Little, 3 Mason, 102; Bliss vs. Wyman, 7 Cal., 257; Hewlett vs. Cruchley, 5 Taunt., 277; Baldwin vs. Weed, 17 Wend., 224; 6 Jones, N. C., 545; 6 Barb., 83; Stone vs. Swift, 4 Pick., 393; Callahan vs. Caffarata, 39 Mo., 136; Hill vs. Palm, 38 Mo., 13; Alexander vs. Haris, 38 Mo., 265.

*Lackland, Martin & Lackland,* for respondent.

I. The first instruction given for plaintiff is conceded in the second instruction given at instance of defendant. The second instruction for plaintiff is supported by Williams vs. Vanmeter, 8 Mo., 339; Callahan vs. Cafferata, 39 Mo., 136; Casperson vs. Sproule, 39 Mo., 39. Plaintiff's third instruction is supported by Hill vs. Palmer, 38 Mo., 13. His fourth instruction is right. (Buckley vs. Knapp, 48 Mo., 158.) His fifth instruction in relation to express malice is proper. (Buckley vs. Knapp, *supra ;* Hill vs. Palmer, *supra.* His seventh and eighth instructions are taken from Hill vs. Palmer, *supra,* and Alexander vs. Harrison, 38 Mo., 308. Plaintiff's twelfth instruction is taken from the statutes on Crimes and Punishments. His thirteenth instruction is only in explanation of the statute requiring the presence of a felonious intent. Plaintiff's fourteenth instruction was taken from Hill vs. Palmer.

II. Plaintiff's ninth instruction is a correct declaration of the law of partnership.

1. Where two parties agree to carry on any business and to divide the profits of it between them, the association is in law a partnership. A communion in profits constitutes a partnership. This is the *prima facie* import of the arrangement. (Lengle vs. Smith, 48 Mo., 276; Colly. Partn. 13–14; 1 Lindl. Partn., 13–14; Meyers vs. Field, 37 Mo., 434; Smith's Mer. Law, 24; Bisset Part., 4; Sto. Part., § 34; Loomis vs. Marshall, 12 Conn., 69; Warner vs. Myrick, 16 Minn., 91; Brown vs. Clark, 3 N. H.; Thorp vs. Marsh, 40 Miss., 158; Buckham vs. Barnum, 15 Conn., 67; Greenwood vs. Brink, 8 N. Y. Sup. Ct., 227; Taylor vs. Scott, 45 Vt., 261; Griffith vs. Buffum, 22 Vt., 181; Styles vs. Shanks, 46 Vt., 612; Miller vs. Price, 20 Wis., 117; Brown's Adm'r vs. Higginbotham, 5 Leigh., 583; Brigham vs. Dana, 29 Vt., 7; Dobbs vs. Halsey, 16 John., 34; Ruckam vs. Decker, 23 N. J. Eq., 283; Katsch vs. Schenck, 18 Law Journ. [English], 386.)

2. No other relation than that of a partnership can be attributed to an agreement disclosing *these elements alone,* because a communion of profit implies a communion in losses. But this inference of the law is not conclusive. It may be rebutted by the presence of other stipulations at war with the conclusion or inference of a partnership, showing that a partnership was not intended. (Friehoff vs. Dudley, 40 Ill., 406; Duryea vs. Whitcomb, 31 Vt., 399–400; Pollard vs. Stanton, 7 Ala., 761; Kerr vs. Potter, 6 Gill., 424; Bigelow vs. Elliott, 1 Clif., 39; Parker vs. Fergus, 43 Ill., 437; Gibson vs. Stone, 43 Bark., 285; Williams vs. Scoulter, 7 Iowa, 435; Scuter vs. Milliken, 47 Ill., 178; Salter vs. Ham, 31 N. Y., 321; Gill vs. Kuhn, 6 S. & R., 335; Price vs. Alexander, 2 Iowa, 432; Ellsworth vs. Pomeroy, 26 Ind., 162; Elgin vs. Webster, 5 Mus. & W., 518; Whitehill vs. Shickle, 43 Mo., 458.)

When received by a party in a subordinate capacity as compensation for services in that capacity, *nothing being said about losses,* no partnership arises. (Bailey vs. Clark, 6 Mas., 374; Hazzard vs. Hazzard, 1 Story, 373; Moore vs. Smith, 19 Ala., 775; Rawlinson vs. Clark, 15 Mees. & W., 300; Beacham vs. Dodd, 3 Harrington, 485; Metting vs. Colt, 3 Halst., 542; Mervin vs. Playford, 3 Robt., 703; Man vs. Glenbie, 4 Maule, 240.)

3. The rule, that a community of profits implies a partnership, is in accordance with Campbell vs. Dent, 54 Mo., 325; for in that case the implication was rebutted by an express statement, serving the place of a stipulation, to the effect that notwithstanding an interest in the profits, there was no partnership. Besides there did not appear a *communion* of interest between the parties.

4. As to the conclusiveness of this presumption of law in respect to third persons, see Cox vs. Hickman, 8 H. L. C., 268; Bulton vs. Sharp, 1 Com. P., 86; Hyde vs. Leggett, 2 Forum (N. Y. Err. & App).

III. Plaintiff's tenth instruction relates to the nature of the accounting and settlement of May 24th, 1870.

1. In respect to its past transactions, a partnership never ceases till a final settlement. (Mudd vs. Bast, 34 Mo., 465.) The interest and estate of each partner in the assets remains unimpaired until a final settlement. (Morin vs. Martin, 25 Mo., 574.)

2. When a balance has been reached, which leaves out only one item—as the receipt of a certain sum of money, requiring no accounting to adjust it—such balance has in some cases been treated as equivalent to a final balance. (Russell vs. Grimes, 46 Mo., 410; Whitehill vs. Shickle, 43 Mo., 543.) The items in this case left unsettled were too numerous to fall within this exception.

3. Until a final balance is ascertained, there is no final settlement. It does not matter to which side it must probably incline. The responsibility of plaintiff was expressly continued on all the uncollected notes and drafts. It was the responsibility of a partner as before. His right of property followed his responsibility, and cannot be separated from it. He was equally interested with the defendants in the collection of these notes; and he was as much interested after the pretended settlement as before.

4. The mule sheds remained unsettled in like manner as if there had been no settlement.

IV. The defendants have no ground to complain of the refusal of the court to grant their instruction in respect to the prosecution being in compliance with opinion of counsel. The court of its own motion gave an instruction marked 3d for plaintiff, which was of similar import. There is no practical distinction between them. They both proceed upon the theory that counsel *advised* the prosecution, not that they gave an *opinion* that a prosecution would lie.

Both Henry C. McPike and James Johnson testified that they *acted* under advice of counsel in prosecuting plaintiff. The question raised in the evidence was whether counsel *advised* a prosecution, not whether they gave an opinion that plaintiff was guilty.

Hough, Judge, delivered the opinion of the court.

This was an action for a malicious prosecution insti-
tuted by Sharpe against Johnston, Henry C. McPike and
Abraham McPike. The petition contained three counts.
There was a finding for the defendants on the second and
third counts, and on the first count plaintiff had a verdict and
judgment for $6,334.42, which was affirmed at General Term,
and from which judgment defendants have appealed to this
court. The first count is as follows:

"Plaintiff states that the defendants, contriving and mali-
ciously intending to injure plaintiff in his good name, fame
and credit, and to bring him into public scandal, infamy and
disgrace, and to cause him to be arrested and imprisoned, and
thereby to impoverish, oppress and wholly ruin him, on or
about the 12th day of July, 1871, made and caused to be made,
and lodged a certain affidavit or information in the Court of
Criminal Correction in and for the County of St. Louis, State
of Missouri, a court having jurisdiction to determine the of-
fences therein complained of, wherein the said defendants at
the county aforesaid, falsely and maliciously and without
probable cause whatsoever, charged and caused the plaintiff to
be charged with the crime of embezzlement and converting
to his own use in the county aforesaid on the 23d day of No-
vember, 1870, the sum of $605.96, in money of the value of
$605.96 and ten bales of cotton of the value of $833.89; that,
in pursuance of said complaint, a certain warrant of arrest
under the seal of said court was issued for the apprehending
and taking of plaintiff, and for bringing him before the said
court, to be dealt with according to law, for the said supposed
offense.

And the defendants under and by virtue of said warrant,
afterwards, to-wit: On the —— day of July, 1871, wrong-
fully and unjustly, and without any probable cause whatso-
ever, caused and procured the plaintiff to be arrested by his
body, and to be imprisoned and afterwards carried and con-
veyed in custody, through the public streets, before said court

to be examined by said court, touching and concerning the said supposed crime.

And the defendants then and there again appeared before said court, alleging and repeating the said false and malicious charges and seeking by hired servants and attorneys to maintain and render successful their said false and malicious charges.

And the said court having heard and considered all that the said defendants could say, allege and swear, against the plaintiff, touching and concerning the said supposed offense, then and there, to-wit: on the —— day of July, 1871, adjudged and determined that the said plaintiff was not guilty of the same, and that there was no probable cause for his said arrest, and then and there caused the said plaintiff to be discharged out of custody of the said court; and all prosecution for said supposed offense is now determined, and the defendants have deserted and abandoned the same.

Plaintiff states that by reason of said premises he has been greatly injured in his said credit and reputation, and brought into public scandal, infamy and disgrace, amongst his neighbors and other good citizens of the country; that he has suffered great anxiety and pain of body and mind, and has been forced and obliged to lay out and expend divers large sums of money, in and about procuring his said discharge and defending himself, and has been greatly hindered and prevented from following and transacting his lawful and necessary affairs and business for a long time, and has been otherwise greatly injured in his credit and circumstances aforesaid, all in the damage of $10,000.00, for which he prays judgment."

The second count charges that defendants on the —— day of September, 1871, submitted to the grand jury of the county of St. Louis, and in the St. Louis Criminal Court, false and fraudulent testimony, whereby defendants maliciously and without probable cause procured the court and grand jury to find an indictment against plaintiff for the crime of embezzlement, in November, 1870, in St. Louis county, of the sum of

$605, that thereupon plaintiff was arrested and brought before said court for trial, and defendants appeared and prosecuted ; that on the 17th of January, 1872, the said court, having heard the same, adjudged that no further prosecution of said indictment could be maintained against plaintiff thereon, and discharged plaintiff; that all prosecution is now ended; and plaintiff asks damages for $10,000.

In the third count plaintiff charges that on or about the 20th November, 1871, defendants again had plaintiff indicted, maliciously and without probable cause, in the St. Louis Criminal Court, for embezzling $605, and twelve bales of cotton of the value of $80 each, had plaintiff arrested, and on hearing, the court adjudged him not guilty and discharged him; that all prosecution thereon is ended : and plaintiff asks judgment for damages in the sum of $10,000.

The defendants, in their answer, admitted that one of the defendants, Henry C. McPike, made and subscribed the affidavit or information mentioned in the petition, but denied that the same or any indictments or any proceedings thereunder were begun, continued or prosecuted, for the purpose of injuring the plaintiff, etc., etc., and denied that said Sharpe was wrongfully or unlawfully and without any probable cause, prosecuted or arrested on said charges in the affidavit or indictments alleged, but averred that said prosecution and indictments were without any malice, and with probable cause to believe the plaintiff guilty of the criminal offences charged in the affidavit; and relied for a justification of their prosecution of plaintiff on the advice of counsel, after a full and fair statement of all the facts to such counsel, that Sharpe was criminally liable.

It appears from the record that in August or September, 1869, the defendants, composing the firm of McPike, Johnston & Co., dealers in stock at St. Louis, entered into an arrangement with the plaintiff Sharpe, who was largely acquainted in the State of Mississippi, whereby defendants were to furnish the money and buy and ship mules and horses to

Sharpe, at Rodney, Mississippi, who was to sell the same and receive one-third of the net profits, and the defendants, as a firm, were to receive two-thirds thereof. This contract was not in writing, and no period was fixed for the termination of the arrangement thus made, though from all the testimony it seems to have been the intention of the parties that a settlement should be made in the spring, at the close of the season for the sale of stock in the south, which was in the fall and winter. In the fall of 1869, the plaintiff went to Rodney, Miss., and began business under the arrangement, the defendants shipping to him, from time to time such stock as the demands of that market required. While there, Sharpe leased ground and erected sheds for the stock, at an expense of $750, which was reckoned in the expense account and credited to Sharpe in the settlement afterwards made to ascertain the net profits of the business. Sharpe had the right to sell on short time, taking first-class paper, and as sales were made by him, he remitted the proceeds in money or drafts to some one of the defendants.

All transactions connected with the joint enterprise, conducted by Sharpe were in his name as agent, for prudential reasons, as he states. Defendants claimed that he never sustained any other relation to them than that of agent. Sharpe, on the other hand, claimed to be a partner.

In May, 1870, the season for the sale of horses and mules having closed, Sharpe returned to his home near Carondelet, when he received a note from one Freeman, a clerk of defendants, informing him that Henry McPike was at home and had set the following Monday to see him, and that he, McPike, wanted him to bring his papers up, that he wanted to settle up as far as he could, and see how the winter's trade stood. Sharpe went up and had a settlement of the winter's transactions. He had his books with him at that settlement, and himself testifies that all the mules that were sent down were accounted for in that settlement. By its terms, the net profits were ascertained to be about $1,200, one-third of which be-

longed to Sharpe, and Sharpe was to be responsible for one-third of the paper taken by him for mules sold, which paper was received by the defendants from him as cash. The following memorandum of that settlement, delivered by the clerk, Freeman, to the plaintiff in the presence of Mr. McPike, after the accounting was had, was read in evidence by the plaintiff. "Cost of stock shipped to Sharpe, and ex. as per H.

| | | |
|---|---|---|
| C. McPike's book, | $23,514 | 94 |
| Ex. paid by Sharpe as per his book, | 4,092 | 19 |
| | $27,607 | 13 |
| Sales of stock, money collected by Sharpe as per his book, | 28,810 | 50 |
| Leaving balance net profit, | $1,203 | 37 |

J. W. Sharpe, Dr. to McPike, Johnston & Co.,

| | | |
|---|---|---|
| For stock and expense in St. Louis, and ex. paid by H. C. McPike, | $23,540 | 29 |
| Two-third net profits on stock, | 802 | 25 |
| Interest on Stewart draft | 72 | 81 |
| " " Drake's and others, | 14 | 76 |
| | $24,430 | 11 |

Cr.

| | | |
|---|---|---|
| By cash and drafts, | 23,462 | 05 |
| Balance due on settlement by J. W. Sharpe | $968 | 06" |

"The mule sheds built by Sharpe at Rodney, having been reckoned in the expense account is now the property of McPike, Johnston & Co. and Sharpe, McPike, Johnston & Co. owning two-thirds of said property."

Plaintiff offered in evidence also the following memorandum, identified by plaintiff as correct, relating to this settlement, May. 1870.

" Due McPike, Johnston & Co., on settlement of trade at Rodney, Miss., nine hundred and sixty-eight dollars and fifty-six cents, and responsible for one-third of sundry notes here-

inafter mentioned, which was settled in the final settlement as cash, viz: one draft dated May 6, 1870, payable four months after date, drawn by James Stewart in favor of J. W. Sharpe, on Payne, Hunting ton & Co., New Orleans, for twelve hundred and twenty-two dollars and eighty cents; one draft dated May 5th, 1870, payable October 8th, 1870, drawn by Henry Heckler on Payne, Huntington & Co., New Orleans, in favor of J. W. Sharpe," etc.—giving description of some six other notes, due bills and drafts which were turned over by Sharpe to Henry C. McPike on that settlement.

To the sum of $968, found to be due from plaintiff to defendant on this settlement, was added other indebtedness of Sharpe to the firm and to Abraham McPike individually, making in all the sum of $2,000, for which sum he executed his note to McPike, and secured the same by deed of trust. When the Stewart draft, mentioned in the memorandum of settlement, matured, it was protested for non-payment, and Sharpe was notified that it was in the hands of a man named Drake, at Rodney, Miss., to whom it had been sent by defendants for collection. Sharpe, being responsible for one-third of the amount of this draft, if not collectible, objected to its being intrusted to Drake for collection, and at the instance of the defendant Johnston, he agreed to go to Mississippi and collect the same, and received from defendant $100 to defray his expenses for that purpose, and took an order from the defendants on Drake, for the draft. This was about the 1st of September, 1870.

Plaintiff testified that after the settlement in May, he had no business relations with the defendants, except when he went down to collect the Stewart draft. He saw them frequently, and went to them repeatedly between May and September, for money which they promised at the time of the settlement to let him have to trade in Illinois, but they refused to advance him any.

Sharpe went to Rodney, received the draft from Drake, and obtained from Stewart, on account of said draft, twelve bales

of cotton, eight of which he sold for $600, and received the money, and left the remaining four bales with commission merchants in New Orleans, to be sold and accounted for to him, and returned to Carondelet about the 16th or 18th of October, 1870.

About the 1st of November, 1870, A. McPike sold the mule sheds at Rodney for $255. The testimony as to the value of these sheds was conflicting, and varied from the sum for which they were sold to $1,000. Sharpe estimated them still higher.

On the 21st of November, 1870, plaintiff wrote a letter from Carondelet, to James Johnston, informing him that he had received twelve bales of cotton on the Stewart draft, but did "not know how much it would bring." This letter, James Johnston testifies, was in answer to a note from him to Sharpe. In the latter part of November one of the defendants called on Sharpe at Carondelet, and demanded the proceeds of the Stewart draft collected by him, Sharpe in the interview having stated he had sold eight bales and received the money, but had no returns from the other four bales. Two of the defendants afterwards called on Sharpe for the money in his hands, but in consequence of the sale of the mule sheds by McPike, at a sum much less than the original cost and what Sharpe claimed to be their true value, and for alleged frauds practiced upon him in invoicing mules to him at a larger sum than was paid for them by defendants, he refused to pay over the money collected, or make any settlement. Defendants then took legal advice, and after stating, as they testify, all the facts and circumstances attending their business connections with Sharpe, and the collection of the Stewart draft, and his refusal to surrender the proceeds, were informed that Sharpe was liable to a criminal prosecution. By direction of their counsel, they went to Sharpe and informed him of the advice they had received; but he refused to make any settlement himself, and referred them to his attorneys.

Defendants returned, took further legal advice, and instituted the proceeding in the Court of Criminal Correction.

It is not necessary to notice the proceeding by indictment, further than to say that he was acquitted. He was also discharged by the judge of the Court of Criminal Correction. The testimony was conflicting as to whether defendants' counsel advised them to prosecute Sharpe, or whether they were only advised that Sharpe was liable to a criminal prosecution.

There was testimony tending to show that Sharpe was insolvent.

The following instructions were given at the request of the plaintiff:

1. "If the jury believe from the evidence, that on the 17th day of January, 1872, John W. Sharpe, the plaintiff, was acquitted of the crime of embezzlement in the St. Louis Criminal Court, upon the indictment found against him at the November term, 1871, of said court, for said crime, then he is innocent of the said crime of embezzlement as charged in the complaint in the Court of Criminal Correction, and in the two indictments submitted in evidence."

2. "If the jury believe from the evidence, that the prosecutions in the Court of Criminal Correction and the Criminal Court, were without probable cause on the part of the parties prosecuting the same, then they may infer that said prosecution was malicious, and if they so find, they ought to return a verdict for the plaintiff."

3. "By 'probable cause' is meant a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the accused is guilty of the offense with which he is charged."

4. "Malice means a wrongful act done intentionally without legal justification or excuse."

5. "If the jury find from the evidence that the defendants in said prosecution were actuated with hostile, angry and vindictive motives against the plaintiff, and that said prosecutions were without 'probable cause' as defined by the court in instruction No. 3, then they should find a verdict for the plaintiff."

6. "If the jury find from the evidence, that the facts and circumstances attending the refusal of the plaintiff to pay over the money mentioned in the complaint and indictment, were not sufficiently strong in themselves to warrant a cautious man in the belief that the plaintiff was guilty of the crime of embezzlement, then there was no probable cause for said prosecution. And if they so find that said prosecutions were without probable cause, then they may infer that said prosecutions were malicious; and if they so find they ought to return a verdict for the plaintiff."

7. "The defendants cannot shield themselves under the advice of counsel, unless they show that they communicated to such counsel all the facts bearing upon the guilt or innocence of the accused, which they knew, or by reasonable diligence could have ascertained."

8. "And even if the jury should find that the defendants, prior to such prosecutions, communicated to counsel learned in the law, all the facts as defined in instruction No. 7, yet, nevertheless, if they should further find that such prosecutions were without probable cause, and that such counsel were not consulted by them in good faith, but that defendants were actuated, in consulting such counsel and in commencing said prosecutions, with angry passions and a hostile desire to injure and wrong him, then the opinion and advice of such counsel is of no avail as a defense in the cause."

9. "If the jury believe from the evidence, that defendants, in the fall and winter of 1869–70, were associated with the plaintiff in the purchase and sale of stock, and that the defendants were to furnish the capital and buy the stock, and the plaintiff was to attend to the sale and the collection of the proceeds thereof, and that the plaintiff was to have one-third of the net profits and the defendants two-thirds, then the plaintiff and defendants were co-partners in such business."

10. "If the jury find that the plaintiff and defendants were in co-partnership according to the law as laid down in in-

struction No. 9 for plaintiff, and if they further find that on the 24th of May, 1870, or thereabouts, the plaintiff and defendants had an accounting in relation to the winter's sales, and that, in said accounting, a balance in the sum of $968.06 was ascertained against the plaintiff, that the notes and bills described in the memorandum given in evidence remained still to be collected, and that plaintiff was to remain responsible for one-third of said notes and bills, and that the mule sheds mentioned in the other memorandum given in evidence remained undisposed of, then said balance was not a final balance in the accounts of said partnership, nor was said accounting a final account or settlement of said co-partnership."

11. "If the jury find that plaintiff and defendants were in partnership, as defined in instruction No. 9 for plaintiff, and if they further find that plaintiff and defendants had an accounting about the 24th of May, 1870, such as is mentioned in instruction No. 10, then in respect to the assets of said co-partnership they remained co-partners still, and the plaintiff could not be guilty of embezzlement by refusing to account or pay over any of the assets of said partnership."

12. "The crime of embezzlement, under the law of this State, is where an agent, clerk or apprentice, servant or collector, of a private person or of any co-partnership, (except persons so employed under the age of sixteen years) or where any officer, clerk, agent, servant or collector of any incorporated company, or where any person employed in any such capacity, shall convert to his own use, or shall take, make way with or secrete with the intent to convert to his own use, without the consent of his master or employer, money, goods, rights in action or any valuable securities or effects whatsoever, belonging to any person, which shall come into the possession or under the care of the offender by virtue of such employment or office."

13. "In order to constitute the offense of embezzlement, the money or property must belong to some other person, and

the offender must convert, or take, make way with, or secrete, the money or property, with the intent to convert the same to his own use, and to deprive the owner thereof; and unless such unlawful intent be present, no embezzlement can be committed."

14. "If the jury find for the plaintiff, he will be entitled to recover such damages as the jury may believe from the evidence, he suffered by reason of the prosecutions; and in addition thereto the jury may add such further amount, by way of exemplary damages, as they think from all the circumstances the defendants should be punished with."

To the giving of which instructions, defendants at the time excepted.

At the instance of defendants, the court instructed the jury as follows:

1. "If the jury find from the evidence, that the draft on James Stewart, of Rodney, was turned over to the firm of McPike, Johnston & Co., by J. W. Sharpe on the settlement of May, 1870, as cash, then the firm of McPike, Johnston & Co. became the owners of said draft."

2. "The issue for the jury to try in this case is, not the guilt or innocence of Sharpe of the crime alleged against him in the affidavit or in the indictments, but the issue is, whether from the facts and circumstances given in evidence, the defendants acted maliciously and without probable cause, and the burden of proof rests with the plaintiff."

The court of its own motion gave the following instruction:

3. "If the jury believe from the evidence that the defendants, before the criminal prosecutions given in evidence were begun against the plaintiff Sharpe, consulted in good faith with one or more attorneys at law, and communicated to said attorneys, in good faith, all the facts within their knowledge, or which they might have learned by reasonable diligence, bearing upon the guilt or innocence of the said Sharpe, of the crime charged; that said consultation and communication was had and made by defendants in good faith with a view

to the advice of counsel learned in the law, that said attorney or attorneys so consulted with, upon such submission of facts, *advised such prosecutions*, and if the jury further find that said prosecutions were begun and carried on by defendants in good faith, in consequence of said advice, and not in pursuance of a previous fixed determination to commence said prosecution, then there was probable cause therefor, and the jury will find for the defendants."

To the giving of which defendants excepted.

The defendants asked five instructions which were refused by the court. Two of these instructions were substantially given in defendants' second instruction. Two of them were intended to cover the ground taken in the instruction given by the court of its own motion, one of them substituting for the words "advised such prosecutions" in the court's instruction, the words " advised the defendants that Sharpe was guilty," and the other, the words " advised the defendants that Sharpe was liable criminally as for a felonious conversion of said moneys." The remaining instruction asked by defendants, and refused by the court, was intended to state the facts in evidence, which would amount to probable cause, but was faulty in saying nothing of the ownership of the draft. Besides, the failure to communicate with defendants, as therein stated, may have been entirely innocent.

It is a proposition too well settled to require the citation of any authorities in its support, that the existence of malice and the want of probable cause are both necessary to the maintenance of an action for malicious prosecution. They are distinct and essential ingredients of this private wrong. If there be reasonable or probable cause, no malice, however distinctly proved, will make the defendant liable. The proof of malice does not establish the want of probable cause, nor does the proof of want of probable cause necessarily establish the existence of malice. That is to say, malice is not an inference of law from the want of probable cause. Malice, however, need not be proved by direct and positive testimony,

but may be inferred from the facts which go to establish the want of probable cause; and this is all that is meant when it is said that malice may be inferred from the want of probable cause. But the jury are not required to make this inference, and they should not be instructed that such inference may be made, unless the facts attending the conduct and determination of the prosecution, and those adduced to establish the want of probable cause, are of a character to warrant such inference. Almost the precise language employed in plaintiff's instruction, declaring that the jury may infer malice from the want of probable cause, has been approved by this court in several cases, and we see no reason for departing from the rule heretofore laid down on this subject. When, however, the facts of the case are such that there is any danger of the jury being misled by such language, the court may very properly give additional instructions on the point.

Probable cause is a mixed question of law and fact. When the facts are undisputed, it is the duty of the court to declare their legal effect. When they are disputed, it is for the jury to determine the question under proper instructions from the court. (Hill vs. Palm, 38 Mo., 13, and authorities there cited.) The facts relied upon by plaintiff to show want of probable cause, and to which reference is made in his instructions, are, first, his discharge by the committing magistrate, and his acquittal in the criminal court; second, that defendants did not communicate to their counsel, before instituting the prosecution, all the facts and circumstances attending the collection and retention of the proceeds of the Stewart draft, which they knew or, by reasonable diligence, might have known; third, that they did not consult their counsel in good faith; and fourth, that the relations of the parties and their respective interests in the money retained by Sharpe were such that the crime of embezzlement charged against him, could not have been committed by him. We do not see any impropriety in telling the jury the legal effect of the acquittal of Sharpe, especially as they were told, at the request of the

defendant, that his guilt or innocence was not a question for them to pass upon, but that the issue to be tried by them was whether the defendants acted maliciously and without probable cause, in instituting the proceedings which resulted in his acquittal. The defendant's second instruction was a proper accompaniment of plaintiff's first instruction, and for any supposed poison in the latter, the former was a sufficient antidote. Plaintiff's instruction as to his discharge and acquittal, was drawn in moderate terms. If the plaintiff were discharged by the court of criminal correction, exercising the powers only of a committing magistrate, not on account of any technical informality, but on an examination of the merits of the charge, under the authority of Brant vs. Higgins, 10 Mo., 73, such discharge would necessarily be considered very persuasive evidence that the prosecution was without probable cause. It is true that the grand jury as well as the committing magistrate have the very question of probable cause to try, and the fact that a true bill may have been found by the one, on the same state of facts which was held by the other to warrant a discharge, would appear to present a case of some difficulty, the prosecutor being sued for both prosecutions; but it is not necessary to discuss this point, as there are no instructions raising the question.

The second and third propositions relied upon by plaintiff, were correctly presented in his seventh and eighth instructions. The advice of counsel will not amount to probable cause, when the prosecutor resorts to such advice only as a cloak for his malice. He must consult counsel in good faith, and it is not only his duty to make himself acquainted with all ascertainable facts having a bearing upon the supposed offence, but he must communicate all such facts to his counsel, however immaterial he may deem them to be. (38 Mo., 13, and authorities cited.) This brings us to the relations of the parties as declared in the ninth, tenth and eleventh instructions. The proposition embodied in the ninth instruction, that a contract providing for a communion of profits,

37—VOL. LIX

without more, implies a communion of losses, and constitutes a partnership, has been argued by the learned counsel for the plaintiff with distinguished ability, but we do not conceive it to be necessary to pass upon that question in this case. Conceding that there was a partnership, the question still remains: was there such a settlement between the plaintiff and the defendants of their partnership affairs, as divested the plaintiff of all interest which he may have had, as a partner, in the Stewart draft, and made him such a stranger to it as that he could be guilty of embezzlement of its proceeds, when collected by him? The business in which plaintiff and the defendants were engaged, was the sale of mules in Mississippi. At the time of the settlement in May, all the property of the alleged partnership, not turned into money, consisted of the mule sheds at Rodney, and the uncollected notes and drafts mentioned in the memorandum of settlement. Plaintiff was authorized to take good notes and drafts for the mules sold by him in the joint enterprise. If the mule sheds and the drafts had been converted into money before the settlement in May, 1870, and that settlement balancing the accounts and ascertaining the net profits had then been made, there can be no doubt, but that it would have been a final settlement. Much stress has been laid on Freeman's note to Sharpe requesting him to come up and settle the winter's trade. We do not think it has any material bearing on the inquiry, or in any way changes the aspect of the case. There was nothing else to settle. The winter's trade embraced all the dealings of the parties. In this settlement, all the losses and expenses of the business were adjusted. Sharpe was credited with the cost of the sheds at Rodney. The drafts and notes were received from him as cash, and he received credit for them as cash. If instead of drafts and notes, bank bills had been turned over by Sharpe to the defendants with the understanding that they had been received by him in good faith as good money, and if any of them proved to be counterfeit, and a loss should occur, one-third of such loss

should be borne by him, it would have been the same thing in effect.  Sharpe would have had no property in the bills so delivered to defendants, though he might be contingently liable to the defendants on account thereof.  It could not be said that such contingent liability prevented the settlement from being a final settlement of the partnership affairs.  As well might it be said, that on a final settlement of a co-partnership and a conveyance by one partner to another of real property in payment of a balance against the grantor, his covenants of warranty would prevent the settlement from being a final settlement, because of a contingent liability on such covenant; and that being thereafter employed to convert such property into money, he would be still engaged in the business of the partnership, with all the rights of a partner.  In one sense Sharpe still had an interest in the drafts; he was interested in their collection; that is, it was to his interest that they should be collected.  But he had no property in the drafts, after the settlement, whether they were collected or not.  The fact that the sheds remained unsold at the time of the settlement, cannot deprive such settlement of its final character.  An accounting had been had which included the sheds and everything else.  A balance had been struck; Sharpe had executed his note for that balance, and he and defendants became joint owners of the sheds, plaintiff owning one-third, and the defendants two-thirds, and it was so written down at the time.  Their respective rights therein, or to the proceeds thereof, did not depend upon any accounting to be had between them as to other items of partnership property, but were as settled and complete as if they constituted the only property of the firm with no mutual accounts and no outstanding liabilities, and no debts to collect.  But if the matter of the mule sheds can in any possible view be considered an unsettled item, still there can be no question as to the right of partners to insulate or segregate any particular transactions from the general business of the firm, and thus take them out of the general law of partnership.  (Pars.

Part., 279, 282; Dakin vs. Graves, 48 N. H., 48–9; Merrill vs. Green, 55 N. Y., 270; 4 Metc. 562–3.)

In every point of view then, Sharpe, after the settlement in May, had no further interest in the Stewart draft as a partner; it was the sole property of the defendants, and when he undertook its collection, he did so as their agent. It follows from these views that the court erred in giving the tenth and eleventh instructions for the plaintiff. We see no error in the other instructions given for plaintiff.

We are further of opinion that the instruction given by the court of its own motion, was erroneous in requiring the jury to find that the attorneys, consulted by the defendants, advised the prosecutions. Counsel, learned in the law, are the proper advisers of men in doubtful circumstances, but honorable men in the profession cannot be expected to advise criminal prosecutions, or to incite civil litigation. It is their business to advise only as to the legal rights or liabilities arising from the facts stated to them by their clients, and such advice when fairly and honestly obtained, exempts the party who acts upon it from the imputation of acting without probable cause. The instruction of the court is otherwise to be preferred to either of those asked by defendants on this subject.

We are all of opinion therefore that the judgments of the General and Special Terms should be reversed, and the cause remanded to the Special Term; and judgment will be entered accordingly.