JOHN J. MCGARRY, Respondent, v MISSOURI PACIFIC RAILWAY COMPANY, Appellant

St. Louis Court of Appeals, May 14, 1889.

1. **Practice, Appellate:** ASSIGNMENTS OF ERROR. Unless the appellant's counsel distinctly designates the evidence alleged to have been improperly admitted, appellate courts will not examine such an assignment of errors.

2. ——: EVIDENCE. The exclusion of competent evidence will not furnish ground for a reversal of the judgment where it appears from the record that the trial court subsequently admitted all such evidence.

3. **Malicious Prosecution:** PROBABLE CAUSE. Malice and want of probable cause are essential to be shown by the plaintiff in an action for damages for a malicious prosecution.

4. ——: Malice: LEGAL INFERENCE. Malice may be inferred from the want of probable cause, but it is not a legal inference in any case, neither is it a necessary inference, nor, in some cases, even an admissible inference.

5. ——. Where good faith in the prosecution is shown, no inference of malice can arise, even though probable cause be wanting.

6. ——. Where all the facts are conceded, the question of probable cause is one of law, but where the facts are disputed the court should instruct the jury hypothetically.

7. ——. The reasonable cause which will relieve a prosecutor from liability is a belief in the guilt of the accused, based upon circumstances which would induce such belief in the mind of a reasonable and cautious person.

8. —— : INSTRUCTIONS. Where there is substantial evidence tending to show probable cause, the court is not warranted in withdrawing the case from the jury.

9. —— : ATTORNEY'S ADVICE: Where an attorney is empowered to begin such proceedings by prosecution as he may see fit, and for which he is to receive a certain sum for each prosecution by him begun, the rule which protects a client when acting under the advice of an attorney, upon whose unbiased judgment he has a right to rely, has no application.

10. ———: NON-SUIT. Where there is evidence, aside from the question of probable cause, on which the question of malice could be properly submitted to the jury, and the apparent good faith of the prosecution in no way negatives the inference of malice admissible from want of probable cause, the court can not non-suit the plaintiff.

11. ——— : EXEMPLARY DAMAGES. Exemplary damages may be given in actions for damages for malicious prosecution.

*Appeal from the St. Louis City Circuit Court.*—HON. SHEPARD BARCLAY, Judge.

AFFIRMED.

*Henry G. Herbel*, for the appellant.

The court erred in admitting illegal evidence offered by plaintiff, and in excluding legal evidence offered by defendant. *Stewart v. Sonneborn*, 98 U. S. 195. The court erred in giving to the jury improper and illegal instructions at the instance of the plaintiff. *Lenox v. Harrison*, 88 Mo. 491; *Fitzpatrick v. Railroad*, 34 Mo. App. 280 ; *Nichols v. Winfrey*, 79 Mo. 551; *Evans v. Railroad*, 16 Mo. App. 525 ; *Railroad v. Houston*, 95 U. S. 703 ; *Beauchamp v. Higgins*, 20 Mo. App. 518. The first instruction given by the court at plaintiff's instance is clearly erroneous, for the reason that it imposes upon defendant the duty of vindicating its good faith in the submission of the facts and circumstances in its knowledge to counsel, when plaintiff's evidence does not impugn it, thereby destroying the legal presumption of right doing, which universally obtains in favor of an accused. *Lenox v. Harrison*, 88 Mo. 491 ; *Fitzpatrick v. Railroad*, 34 Mo. App. 280 ; *Nichols v. Winfrey*, 79 Mo. 551 ; *Evans v. Railroad*, 16 Mo. App. 525 ; *Beauchamp v. Higgins*, 20 Mo. App. 518 ; *Railroad v. Houston*, 95 U. S. 703.

*C. P. & J. D. Johnson*, for the respondent.

The reasonable and probable cause which will relieve a prosecutor from liability in such cases is a belief by him in the guilt of the accused, based upon circumstances sufficiently strong to induce such belief in the mind of a reasonable and cautious person. None such was shown in the case. *Sharp v. Johnston*, 76 Mo. 660; *Vansickle v. Brown*, 68 Mo. 627; *Sappington v. Watson*, 50 Mo. 83; *Sparling v. Conway*, 75 Mo. 510. The offense charged in the criminal information against respondent had not been committed, as appellant well knew, inasmuch as no overt act had been committed in furtherance of the alleged conspiracy. R. S., secs. 1524, 1526. The prosecution was malicious upon the part of appellant. Its malice was proved by direct and positive testimony. But even if it was not, it was inferable from the facts which go to establish want of probable cause for the institution of the prosecution. *Sharp v. Johnston*, 59 Mo. 557; s. c., 76 Mo. 660; *Vansickle v. Brown*, 68 Mo. 627; *Holliday v. Sterling*, 62 Mo. 321.

ROMBAUER, P. J., delivered the opinion of the court.

In March, 1886, the plaintiff was in the employ of the defendant as a sheet-iron worker at its machine shops in St. Louis, Missouri. He was sober, industrious and a good workman, and, prior to the time hereinafter stated, the only complaint his employer had against him was that he took too active an interest in matters concerning his order, the Knights of Labor, to the occasional neglect of his work. The defendant is a railroad corporation and its road forms part of what is known as the Gould Southwestern System of railways.

On March 6, 1886, there was a strike involving many employes of the defendant and spreading over the entire system. The plaintiff and several hundred of his fellow knights left the shops, and most of them,

including the plaintiff, never returned. Within a week thereafter one of the defendant's trains of passenger cars, known as the Washington Accomodation, was stopped by a body of strikers, of whom the plaintiff was the ostensible leader, the engine was detached, and the train was not permitted to proceed. The plaintiff thereupon was indicted by the grand jury of the city of St. Louis under the provisions of section 1354 of the Revised Statutes, which makes it an indictable felony to wilfully and maliciously obstruct the track, or to remove any portion of a railroad or the works thereof, with intent to obstruct the passage of a car or cars thereon. This indictment was subsequently quashed by the criminal court, a demurrer to the information under the statute for the same offense having previously been sustained by the court of criminal correction, presumably on the ground that the words, "any portion of a railroad or the works thereof," referred to permanent and immovable appendages of the road and not to an engine and car. Meanwhile the strike proceeded until the sixth of April, when it practically terminated, although it was not formally declared off until May 6, 1886. There were some acts of violence outside of the city of St. Louis, some of the special police in charge of the trains being fired at, but there was no evidence connecting the plaintiff with any of these acts, unless the report hereinafter referred to may be considered such evidence. The defendant for its own protection employed agents and attorneys, and authorized the attorneys thus employed to cause the institution of such criminal proceedings against the strikers as the facts disclosed to the attorneys might warrant.

An employe of the defendant by the name of Heywood joined the Knights of Labor organization about March 12, and thereafter attended a number of meetings of the society at which the plaintiff was present. This man came late at night on March 25 to one of

defendant's attorneys, and informed him that the knights held a meeting at Euterpe Hall in this city that afternoon, and proposed to raid the machine shops of the defendant that night, between one and two o'clock, run an engine on the turn-table and run the coach containing the defendant's guard on top of it, and do as much damage as could be done in a short time. The attorney thereupon sent him to one Furlong who was in charge of the defendant's detective service, to whom he repeated the same information, and to whom, according to Furlong's statement, he further said, that the plaintiff and the executive board were cognizant of this matter, that the plaintiff was a party to the conspiracy and knew all about it.

Heywood was thereafter (if not before) regularly employed by the defendant, in conjunction with other employes, who were also Knights of Labor, to obtain information touching the movements contemplated by the knights, and to report from time to time and did so. No steps other than the protection of the company's property against the supposed contemplated raid were taken at the time, but on June 14, 1886, after the strike was declared off, the prosecuting attorney of the St. Louis court of criminal correction filed an information charging the plaintiff and a number of others with the offense of unlawfully conspiring and confederating, for the purpose of throwing and running an engine into the pit of the turn-table in the shop of the Missouri Pacific Railway Company and a part of their works, and to unlawfully injure and damage and destroy that part of the personal property of said company.

The information further charged that in pursuance of said agreement, confederation, and conspiracy (the defendants) did, at said city, assemble themselves together for the purpose and with the intent to execute and carry out the purpose of said conspiracy, and did organize themselves into an unlawful body, and select and determine on leaders to govern and direct them, in

McGarry v. Mo. Pac. Ry. Co.

the attack by them to be made on the building of said company containing said personal property, being the property of said railroad corporation.

The plaintiff was arrested upon this information and held to bail. His case was twice continued by the state, and once by consent, until September, 1886, when the prosecuting attorney, upon suggestion of the special attorneys employed by the defendant herein, entered a *nolle prosequi* therein, and the plaintiff was finally discharged. He thereupon instituted the present action, and upon the trial thereof recovered a judgment for fifteen hundred dollars, from which the defendant prosecutes this appeal.

The errors assigned relate to the admission of illegal testimony on the part of the plaintiff, to the exclusion of legal testimony offered by the defendant, and to the action of the court in giving and refusing instructions.

The evidence in this case covers over three hundred and thirty type-written pages, and we are not directed by the defendant's counsel to any portion thereof containing the evidence improperly admitted, or to any evidence which is claimed to have been illegally admitted ; hence in conformity with our former rulings, we must decline to enter into an examination of this assignment.

We find, upon a careful examination of the record, that the rulings of the court complained of, touching the exclusion of evidence, were not prejudicial to the defendant. In the earlier stages of the trial, the court excluded evidence offered by the defendant touching the plaintiff's connection with the stoppage of the Washington accommodation train, hereinabove referred to, as well as other evidence tending to show the plaintiff's active participation in the strike by overt acts, on the theory, we assume, that they formed no part of the conspiracy complained of. Had the court persevered in this ruling, it might have furnished reversible error,

since in prosecutions of this character, all the circumstances surrounding the transaction, in any way germane to the subject as far as the same came to the prosecutor's knowledge, are admissible in evidence, being evidence bearing upon the good faith of the prosecution. *Stewart v. Sonneborn*, 98 U. S. 195. But we find upon an inspection of the record that all such testimony was subsequently admitted, and that it conclusively appeared by such testimony, that the plaintiff was the ostensible leader of the gang which stopped the Washington accommodation train, that he was prominently connected with the strike, claiming on various occasions to exercise some authority in controlling the action of others engaged in it, and that his conduct upon the whole was such as to make him amenable to the suspicion, that he would, under circumstances, join in a conspiracy, such as is complained of in the information filed.

An examination of the record discloses that the defendant did have the benefit of all this testimony, and as its complaint touching the exclusion of evidence relates exclusively to these matters, we think there was no error prejudicial to the defendant's rights in the rulings of the court on that subject.

At the close of the evidence, the defendant demurred to the plaintiff's case by instruction, which the court. refused.

Malice and want of probable cause are essential ingredients of this action, and it is incumbent upon the plaintiff who seeks a recovery to show both. This is an elementary proposition and need not be discussed. Malice may be inferred from the want of probable cause, although it is not a legal inference in any case, neither is it a necessary inference, nor is it even in all cases an admissible inference. *Grant v. Reinhardt*, 33 Mo. App. 74. When all the facts are conceded, then probable cause becomes a question of law, and it is for the court to tell the jury whether there was or was not

any probable cause for the prosecution, but when the facts are disputed, then the court should instruct the jury hypothetically as in other cases.

The first question for our consideration therefore is whether in this case the defendant had reasonable grounds for believing that the plaintiff was guilty of the offense charged in the information. The reasonable cause which will relieve a prosecutor from liability is a belief by him in the guilt of the accused, based upon circumstances sufficiently strong to induce such belief in the mind of a reasonable and cautious person. *Sharp v. Johnston*, 76 Mo. 660. It must be something more than bare suspicion or surmise.

The offense charged in the information consists of an unlawful conspiracy, and some overt act committed in its furtherance. R. S., secs. 1524, 1526. When the plaintiff had given evidence that he was innocent of the charge, and that the defendant had dismissed the prosecution as groundless, he had given some evidence of a want of probable cause to require the defendant to make a showing. In view of the plaintiff's prior violent conduct and declarations, and the undisputed fact of Heywood's report to the defendant's agents and attorneys touching the plaintiff's presence and conduct at the meeting on March 25 at Euterpe Hall, the defendant had reason to believe that McGarry participated in the acts of the meeting. If such participation in itself would have constituted the offense charged, such showing would have been sufficient. But we can find no evidence in the record tending to show any knowledge or information on part of the defendant's agents, when the information was filed, warranting a reasonable belief on their part that any overt act had been committed in furtherance of such conspiracy, either with or without the plaintiff's sanction, and hence the court was not justified to withdraw the case from the jury on the ground, that there was no evidence of a want of probable cause.

We next proceed to the question of malice. We concede that it was incumbent on the plaintiff to prove malice in the prosecution as an independent fact. *Mitchell v. Jenkins*, 5 B. & Ad. 588. While this fact may be inferred from a want of probable cause, the jury should not be instructed that they may make it, unless the facts attending the determination of the prosecution, and those adduced to establish the want of probable cause, are of a character to warrant the inference. *Sharp v. Johnston, supra.* When good faith in the prosecution is shown, no inference of malice can arise even though probable cause be wanting. *Barron v. Mason*, 31 Vt. 189, 202.

As each case depends in a great measure on its own circumstances, no general rule can be laid down as to facts warranting the inference of malice, the question of malice being one for the jury, and resting for its proof in the great majority of cases on inferential evidence only.

The facts elicited in this case, all of which have more or less a bearing on this subject, may be summarized as follows :

Shortly after the beginning of the strike, the defendant engaged special attorneys, who, as the evidence shows, were authorized to institute such actions against the strikers, as the facts disclosed to them might warrant. These attorneys worked in conjunction with a special agent in charge of the defendant's detective force, but not under his control. They had a contract with the defendant by the terms of which they were to be paid seventy-five dollars for each prosecution instituted by them, and a sum in addition thereto if they secured a conviction. They were paid the seventy-five dollars in the case brought against the plaintiff, although the prosecution against him was dismissed by them, and although he was joined in the same information with forty-three other defendants, for

the prosecution of each of whom, we infer from the evidence, the attorneys were entitled to charge seventy-five dollars regardless of the result.

These prosecutions were instituted without any material interference by the defendant's managing officers. As the attorneys claimed and exercised authority to institute prosecutions upon their own judgment, they necessarily represented the defendant in these prosecutions not only as its attorneys, but *quo ad hoc* as its general agents for that purpose, and the corporation became responsible for their acts as for its own. As the attorneys moreover were paid by contract, so much for each man they prosecuted, and thus an inducement was held out to them to prosecute as many as possible, the rule which protects a client when acting under the advice of an attorney, whose unbiased judgment he has a right to rely on, we think can have no application.

The strike, as above stated, had practically terminated on April 6. It was formally declared off May 6, 1886. The information filed related to an offense alleged to have been committed March 25, and was not filed until June 14, 1886, more than one month after the strike was formally declared off, and more than two months after it had terminated for all practical purposes. A written report made by one Ecker, to the defendant's special agent, was read in evidence, which was made in April, 1886, and wherein the plaintiff is represented as having expressed himself at a meeting held the preceding night in the most violent terms against the defendant's special agent, and the attorney who subsequently prepared and filed the information against him.

These facts will show that there was evidence, outside of the mere fact of want of probable cause, on which the question of malice could properly be submitted to the jury, and that the case was not one wherein the apparent good faith of the prosecution in any way

tended to negative the inference of malice admissible from want of reasonable and probable cause.

We must conclude therefore that the court did not err in refusing to non-suit the plaintiff.

The court, upon its own motion, instructed the jury as follows:

"1. The issue for the jury to try in this case is not the guilt or innocence of J. J. McGarry of the offense alleged against him in the information in the court of criminal correction, but the main issue is, whether from all the facts and circumstances given in evidence, the defendant instituted the proceedings against the plaintiff in the court of criminal correction on the charge of conspiracy, and prosecuted the same without a belief in the guilt of the accused, based upon circumstances sufficiently strong in themselves to induce such belief in the mind of a reasonable and cautious man ; and in addition thereto, that the defendant was actuated in such prosecution by malice against the plaintiff, and the burden of proving these facts rests upon the plaintiff ; that is to say the plaintiff must establish said facts by a preponderance of the evidence.

"2. The court instructs the jury that the plaintiff, in order to recover in this action, must show :—

" *First.* That the defendant instituted and prosecuted the proceedings against the plaintiff set forth in the petition.

" *Second.* That the prosecution alleged in said petition was finally determined in favor of the plaintiff.

" *Third.* That from all the facts and circumstances connected with the case, the defendant, at the time of instituting and carrying on the prosecution mentioned in said petition, had no reasonable or probable cause to believe the plaintiff was guilty of the offense charged, as more fully explained in instruction numbered five (5).

" *Fourth.* That in said proceedings, against the plaintiff alleged in said petition, the defendant was actuated by malice towards the plaintiff, and the burden

McGarry v. Mo. Pac. Ry. Co.

of proving all these facts to the satisfaction of the jury (that is to say, by a preponderance of evidence) devolves upon the plaintiff.

"3. By mentioning the 'burden of proof' and the 'preponderance of evidence' the court means merely to briefly express the rule of law which is, that unless the evidence before you, in regard to the facts necessary (under these instructions) to a verdict in favor of the plaintiff appears in your judgment more credible than the contrary evidence regarding said facts, or regarding the facts mentioned in these instructions as constituting a defense to said claim, then your verdict should be for the defendant.

"4. If you find from the evidence the facts recited in the instruction numbered two (2), then you should return a verdict in favor of the plaintiff; but unless you so find all of said facts, your verdict should be for the defendant."

"6. If you find from the evidence, that the defendant instituted the prosecution for conspiracy against the plaintiff without probable cause (as defined in these instructions) and that, in so doing, it was either actuated by hostile, angry, or vindictive motives against the plaintiff, or that its act in so doing was intentionally done with a knowledge that it was without legal justification or foundation, then its act in so doing would be malicious within the meaning of the law, and of these instructions."

"10. If under the other instructions, you decide to return a verdict for the plaintiff, you will then proceed to assess his damages at such sum as you find from the evidence to be a fair compensation for any loss of earnings, and any necessary and direct injury to the feelings and reputation of the plaintiff which you believe from the evidence he sustained, by reason of the said prosecution complained of, and you are further at liberty (if you think just and proper in view of all the facts and

circumstances in evidence ) to add thereto such 'further' sum by way of exemplary damages as you think and believe from the evidence, and, in view of all the facts before you, to be right and just to punish the defendant for the injury complained of ; and in that event, you should specify your finding on that point as a separate item in your verdict.

"11. If, on the other hand, you decide to find for the defendant, your verdict need merely state that you find for the defendant on the issues joined."

And upon the defendant's motion, the court further instructed them :

".5. The court further instructs the jury that by the words 'probable cause,' as used in the instructions of the court, is meant a belief by the defendant in the guilt of the accused based upon facts and circumstances sufficiently strong in themselves to induce such belief in the mind of a reasonable and cautious man."

"7. If the jury believe from the evidence that the defendant, before the criminal prosecution, given in evidence, was begun against the plaintiff, consulted in good faith with one or more attorneys at law, and communicated all the facts within its knowledge, or which it might have learned by reasonable diligence bearing upon the guilt or innocence of said plaintiff McGarry of the offense alleged, that said consultation and communication was had and made by the defendant in good faith, with the view to the advice of counsel learned in the law ; that said attorney or attorneys so consulted upon such submission of facts advised that the plaintiff was liable to criminal prosecution therefor, and if the jury further find from the evidence that such prosecution was begun and carried on by the defendant in good faith, in accordance with said advice, then such prosecution was not malicious, and if they so find, the jury will return a verdict for the defendant."

If the plaintiff is entitled to recover at all, these instructions were as favorable to the defendant as it had

any right to demand. Exemplary damages are always admissible when malice is an essential ingredient of the action, hence the defendant's objection to instruction "10" is untenable. We are warranted to assume, since only two of the plaintiff's instructions were given, and those are numbered 8 and 9 in the record, that this instruction was one given in lieu of an instruction asked by the plaintiff and refused; but even were the facts otherwise, the giving of the instruction would not be error.

On part of the plaintiff the court gave the following instructions:

"8. The jury are further instructed that the defendant can not shield itself under the advice of counsel, unless it shows that it or its agents, who instituted such prosecution, communicated to such counsel all the facts bearing upon the guilt or innocence of the accused which they knew, or, by reasonable diligence could have ascertained; and even if the jury should find that the defendant or its agents, prior to such prosecution, communicated to counsel learned in the law all of such facts, nevertheless, if the jury should further find that such prosecution was without probable cause and that such counsel were not consulted by the defendant or its said agents in good faith, but that the defendant or its said agents in consulting such counsel, and in commencing such prosecution, were actuated by angry passions and a hostile desire, to injure and wrong the plaintiff, then the opinion and advice of such counsel is of no avail as a defense in this action.

"9. And the jurors are further instructed that if they believe and find from the evidence that the defendant, by and through its agents, duly authorized and empowered thereto, employed attorneys for the purpose of instituting and prosecuting cases against persons charged with crimes committed against the defendant

company ; that under said employment said attorneys were given power to institute and prosecute said cases at their option, without being required to report to, or receive special authority from, said defendant with reference to the same ; that in pursuance of such authority, said attorneys, without any other direction or authority from the defendant therefor, instituted the prosecution against this plaintiff and others in the St. Louis court of criminal correction for the crime of conspiracy ; that in instituting said prosecution said attorneys acted without reasonable or probable cause to believe that the plaintiff was guilty of the said crime of conspiracy, then the acts of said attorneys in that behalf became and were the acts of the defendant; and if the jurors believe and find that said attorneys acted in that behalf maliciously ( as explained elsewhere in these instructions), then their act in that respect also became and was the act of the defendant."

These instructions state the law substantially as declared in *Sharp v. Johnston,* 59 Mo. 557, and 76 Mo. 662.    As above seen, there was evidence in the case warranting the submission to the jury of the facts stated in instruction number 9.

A careful analysis of the record satisfies us that we are not warranted to disturb the judgment.    All the judges concurring, it is affirmed.