Mrs. Irwin WITT, Plaintiff-Respondent,

v.

The KROGER COMPANY, a Corporation, and Dana Loveland, Defendants-Appellants.

No. 24098.

Kansas City Court of Appeals.

Missouri.

May 24, 1965.

Michael J. Bogutski, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, for appellants.

Lathrop, Righter, Gordon & Parker, by Joseph E. Stevens, Jr., Irvine O. Hockaday, Jr., Kansas City, for respondent.

SPERRY, Commissioner.

Plaintiff, a resident of Jackson County, sued The Kroger Company, a Corporation engaged in the merchandising business, and Dana Loveland, co-manager of its store located at Truman Corners, in Grandview, Jackson County, Missouri. The action is for damages growing out of malicious prosecution. From a judgment for plaintiff in the amount of Two Thousand Dollars ($2,000.00), for compensatory damages, and for Three Thousand Dollars ($3,000.00) for punitive damages, defendants appeal.

We will state the pertinent facts as concisely as we can, having in mind the legal questions presented by defendant.

There is evidence to the effect that, about 7:00 P.M., September 21st, 1961, the Grandview police department received a call to come to the Kroger Store at Truman Corners. Two officers proceeded to the store. Sgt. Couch stated that they were met by defendant Loveland. However, the witness was probably mistaken as to it being Mr. Loveland, because Loveland testified that he was not there at that time but that Mr. Cochran, the other co-manager, was in charge. Mr. Cochran did not testify, so it may be inferred that Loveland's version is correct. The manager in charge informed the witness that a woman by the

name of Wilson cashed a forged check, which check was exhibited to the officer; that he, the manager stated that he suspected that the check was bad and confronted her; that she denied being Mrs. Wilson, whose name was on the bad check; that he had checked at the address given on the check and that the party signing the check was unknown there; that a store employee was then watching a car in the lot, to which the suspect had gone. The witness then stated that the officers observed this car; that a man and woman entered it and drove out of the lot; that he obtained the license number which, it was learned, had been issued to plaintiff and her husband; that this information, as to the license, was given to the store manager in charge; that, several days later, witness was given a warrant to serve on plaintiff; that he was also given a picture of Mrs. Wilson, who cashed the check; that he proceeded to plaintiff's home where the warrant was served on her; that she had to change from night dress into street clothing in order to go with him; that the picture bore a faint resemblance to plaintiff but that witness did not think it was her picture; that plaintiff was taken to the Grandview police station; that Mr. Cochran, Kroger Store manager, was called and came to the station after thirty or forty minutes; that Mr. Cochran stated that plaintiff was not the person who had cashed the bad check; that plaintiff was released.

Officer Couch stated that, some three or more days after his first trip to the store, he had a telephone conversation with Mr. Loveland, who stated that they, at the store, were certain that the picture above mentioned was one of plaintiff, who had been followed to her car by the store employees on the night that the check was cashed.

It was shown that Mr. Loveland went to the office of the Magistrate where he signed a complaint against plaintiff, upon which the warrant was issued. No complaint was ever signed by the Prosecuting Attorney, or by any of his assistants, but the warrant was issued and signed by the Clerk of the court of Magistrate Davis, in that office, at Grandview.

Mr. Raupp who, on September 28th, 1961, was clerk of the Seventh District Magistrate Court, which meets at Grandview, stated to the effect that he was called to the court room at about 9:00 P.M.; that Mr. Loveland and others were present; that witness drew a complaint on a bad check charge; that he put on the complaint and on the warrant the information that those instruments contained; that he obtained same from the Chief of police, who was present, or from Mr. Loveland, either or both; that the complaint, as completed, was signed by Mr. Loveland.

It was shown that a check had been issued to plaintiff by Jones Store Company, and by her cashed at the Kroger Company store on September 21st, 1961, and that this check was paid by the bank upon which it was drawn two days before the warrant herein was issued.

Mr. Loveland testified to the effect that he was "co-manager" of the Kroger store at Truman Corners during the week of September 21st to September 28th, 1961; that Mr. Cochran was manager; that witness left the store on September 21st, at about 5:30 P.M.; that he was not at the store at 7:30 P.M. on that day; that he drove to the store that night, at about 9:15 P.M., which was after closing time, and saw and talked with Mr. Cochran who was on duty; that Mr. Cochran told him that he thought that the store had been given a bad check; that he requested witness to call and verify whether it was or wasn't, the next morning; that he learned that the check in question, issued by Mosher Williams Company, was bogus; that another store had received a similar check and had obtained a picture of the party who passed it; that the manager of the store brought the picture to the Kroger store and gave it to Mr. Cochran; that witness delivered the picture to the Chief of police at Grandview, at the Kroger Store; that, at about 9:00 P.M., September 28th, he went to the Magistrate Court build-

ing at Grandview and signed a complaint against plaintiff so that a warrant could be issued.

From the evidence before it the jury could have believed that this prosecution was instigated and procured by Mr. Cochran and Mr. Loveland, co-managers of the Kroger Company store involved here. There was evidence to the effect that Mr. Cochran, who was in charge of the store on the night of September 21st, confronted plaintiff regarding the "Wilson" check; that she denied that she was the Mary Wilson, payee thereon; that Kroger employees watched plaintiff when she went to her car; that they kept her car under surveillance and called the police; that when the officers arrived the manager (Cochran) told them that he believed that plaintiff, whose car he pointed out to the police, had passed a bad check; that police took the license number, learned that it was issued to plaintiff and her husband, and so informed the manager; that the manager, Cochran, checked and learned that Mary Wilson was unknown at the address given on the bogus check, and so informed the police; that Mr. Cochran obtained a picture of the woman who passed a similar bogus check at another store and gave it to Loveland, who delivered it to the police, at the store, and told them that the Kroger people believed it to be a picture of plaintiff; that Mr. Loveland signed a complaint against plaintiff, naming her therein on a bad check charge so that a warrant could be issued thereon; that she was arrested, late at night, and detained for an hour or more; that Mr. Cochran was called to identify her and stated that she was not the woman who passed the check; that the check cashed by plaintiff the night of September 21st had been paid by the bank upon which it was drawn on September 26th, two days before the complaint was signed; and that plaintiff was of excellent character and had never been charged with the commission of an illegal act.

■ Defendants says that their motion for directed verdict should have been sus-

tained, for the reason that malicious prosecution was not actually instituted, because the complaint upon which the warrant was issued was never signed by the Prosecuting Attorney or Assistant. They rely on Tiede v. Fuhr, 264 Mo. 622, 175 S.W. 910. The court there held, 1. c. 913:

> "In malicious prosecutions * * * it must be shown that there was a 'prosecution,' which necessarily implies the employment of legal process *possessing at least a measure of regularity*". (Emphasis Supplied).

The process here employed was issued by the clerk of the Magistrate Court and was legal on its face. It possessed "at least a measure of regularity".

In Stubbs v. Mulholland, 168 Mo. 47, 67 S.W. 650 the court considered a case where the arrest was made under a void warrant. The court (663), said that the defect was immaterial because "a bad indictment may serve all the purposes of malice as well as a good one", and that the injury to plaintiff may be as great in the one case as in the other.

■ Defendants also contend that the motion to dismiss should have been sustained because there was no evidence tending to prove that Loveland was acting as Kroger's agent in commencing the action, or that he was authorized to act. Kroger had two manager employees. Loveland said that he was co-manager. But, if he was only the assistant manager, then Cochran was the manager. The evidence is that Cochran and Loveland acted jointly in this affair. They were the only representatives of Kroger who were shown as having any authority at this store. Kroger could only act through its agents. These men were in charge of its business at all times here involved, and they were acting together, jointly. That was the undisputed evidence. There was substantial evidence from which a reasonable person could believe that Loveland was the agent of Kroger in all his actions in this incident.

Defendants say that plaintiff's instruction No. 1 is prejudicially erroneous in that, by it, the jury was told that as a matter of law the act of Loveland was the act of Kroger. The jury was required to find that both defendants caused the arrest, and required sufficient findings of fact to be made so as to justify the finding of a verdict for plaintiff, if such facts were found to be true. The instruction is not subject to the criticism made.

Instructions Nos. 2 and 4 are criticised on the grounds that "they likewise assumed the controverted fact of agency". The criticism is rejected.

Defendants contend that the court erred in submitting the issue of punitive damages because more than one defendant was sued. It is conceded by plaintiff that where the submission of a malicious prosecution case is as to two or more defendants it is error to receive evidence of or to instruct on the financial worth of either of the defendants. This court so held in the case of Thomas v. Durham Motors, Inc., et al., Mo.App., 389 S.W.2d 412 (handed down concurrently herewith).

However, in the case at bar, no evidence of financial worth was offered or received, and no instruction given on that issue. This rule does not prevent the recovery of punitive damages in all cases where several defendants are joined. Washington Gas Light Company v. Lansden, 172 U.S. 534, 553, 19 S.Ct. 296, 303, 43 L.Ed. 543. In effect, that was our ruling in Thomas v. Durham Motors, Inc., et al., supra.

Defendants contend that the award of damages was excessive under the unusual facts in this case. The facts are disclosed by the record, have been fully discussed. Plaintiff's age, physical condition, and her good reputation were known to the jury. The court, in Huffstutler v. Coats (Mo.) 335 S.W.2d 70, 82, quoted approvingly as follows:

" 'The law concedes a wide latitude of discretion to the jury in actions of this class * * *. Numerous considerations must necessarily enter into the question of what is just compensation in such a case, but no definite rule can be laid down as to any of them. The law has provided that the jury shall decide this question. Disgrace is a relative term. What is such to one man is not necessarily so to another; and, while it applies to each, its effect or measure is great or small as other conditions exist. Mental anxiety and pain caused thereby, and humiliation and danger from a prosecution for a grave criminal offense, are all conditions for the jury, as well as the jeopardy in which the liberty of the plaintiff was placed by such prosecution.'

"Applying the above-stated criteria to the facts in this case and taking into account the facts that an able trial judge considered and rejected defendant's same contention as to excessiveness, we are of the opinion that we should not interfere with the amount of the judgment".

The trial court denied the motion for new trial wherein it was alleged that the verdict was excessive. The amount of the verdict is not such as to shock the judicial conscience and it is affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court.

All concur.