Robert A. SANDERS, Respondent,

v.

DANIEL INTERNATIONAL CORPORATION, Appellant.

No. 65529.

Supreme Court of Missouri, En Banc.

Dec. 18, 1984.

John E. Burruss, Jr., J. Kent Lowry, Jefferson City, for appellant.

Richard G. Callahan, Charles R. Miller, Jefferson City, for respondent.

WELLIVER, Judge.

This case involves a malicious prosecution action brought by respondent, Robert A. Sanders. At trial, the jury returned a verdict in favor of respondent, awarding him $100,000 in actual damages and $250,000 in punitive damages. We ordered the cause transferred after the Southern District affirmed the judgment. We reverse and remand.

The criminal prosecution forming the basis for this malicious prosecution action was a misdemeanor case in which respondent was charged with the attempted theft of tools and gauges valued over fifty dollars. Respondent was one of seven persons charged with that crime. The information was sworn to by the prosecutor following a conversation in his office with agents of appellant, Daniel International Corporation. The prosecutor dismissed the misdemeanor action because he believed that insufficient evidence existed to proceed with the trial. Respondent then filed this action for malicious prosecution.

I

At the time the information was filed, appellant was engaged in the construction of a nuclear power plan in Callaway County, Missouri for Union Electric Company. The construction project required more than 2,700 workers, and the company had crews working day and night shifts. Union Electric owned all the tools used on the job, and pursuant to a contract appellant was responsible for and controlled the purchase, allocation and use of all the tools. The individual workers did not bring their own tools onto the job site. Appellant issued individual tool boxes to each worker, and the workers were allowed to keep their tool boxes in larger "gang boxes" assigned to each crew. The crew foreman kept each gang box locked. Additional tools could be checked out from a "tool room" and were to be returned to the tool room at the end of the day.

Prior to December 1978, tool theft and tool hoarding had been a recurring and expensive problem. Posted on the fence surrounding the job site were signs warning that persons caught removing tools from the project would be subject to prosecution. Pinkerton security furnished personnel to control perimeter access to the job site.

Respondent was a member of Crew 52, a night-shift pipefitting crew consisting of a foreman and eight crew members. On the morning of December 20, 1978, a day-shift pipefitting crew, Crew 5, reported to work and discovered that its gang box had been broken into. The lock on the gang box had been cut with a pair of bolt cutters. A quick investigation revealed that a member of Crew 52, Gus Groves, had checked out bolt cutters from the tool room on the previous night. In the presence of Superintendent Terry Heers, security guards opened the Crew 52 gang boxes with a master key. At the top of one of the gang

boxes was a set of welding gauges, the hoses of which had been cut recently. These cuts matched the other ends of the hoses that remained in the Crew 5 gang box. Also present in a Crew 52 gang box was a pair of welding leathers belonging to a member of Crew 5.

Heers directed that an inventory be made of the tools in the Crew 52 gang boxes. The gang boxes and the individual tool boxes that were inside the gang boxes were emptied and all of the tools of a particular kind were put in a pile for inventory purposes. Some of the tools in the gang boxes were in individual tool boxes and some were not.

Next, Heers discussed the situation with Service Manager Gary Warblow and with Assistant Project Manager Wallace Sykora. They decided to go to the sheriff's office to discuss the problem. The sheriff sent Warblow and Heers to the prosecutor's office, where they met with Callaway County Prosecutor Gene Hamilton. Hamilton testified that Warblow and Heers initially asked him about the possibility of search warrants for the houses of seven members of Crew 52, and he told them that search warrants were not possible because (1) the seven people resided outside of Callaway County and the warrant would be limited to that county; and (2) there was no showing that tools had been taken from the plant or that they were actually located in their houses. He said that no probable cause existed to search their houses. After a conversation lasting approximately a half hour, Heers and Warblow, at the suggestion of the prosecuting attorney, signed a blank complaint against respondent. Hamilton then filed an information upon which an arrest warrant was issued. On February 15, 1979, Hamilton dismissed the charges against Sanders.

## II

Appellant raises a number of issues on appeal. First, we must address appellant's argument that respondent failed to establish all of the elements of the tort of malicious prosecution, particularly the requisite "malice." This involves examining whether MAI 16.01 (1981) correctly defines malice for a malicious prosecution. MAI 16.01 provides, in part, that malice is "the doing of a wrongful act intentionally without just cause or excuse." Also involved is a determination of whether this same instruction should be used when instructing the jury on punitive damages in a case involving a malicious prosecution.

Actions for malicious prosecution have never been favorites of the law. There is almost universal agreement that sound public policy dictates that the law should encourage the uncovering and prosecution of crime. Any "policy that discourages citizens from reporting crime or aiding in prosecution would be undesirable and detrimental to society in general." *Cates v. Eddy*, 669 P.2d 912, 917–18 (Wyo.1983). Courts have always recognized that "[m]alicious prosecution is an action which tends to dilute the public policy of encouraging persons having knowledge of possible crimes to cooperate with public officers." *Seelig v. Harvard Cooperative Society*, 1 Mass.App. 341, 296 N.E.2d 825 (1973). *See also Bonzo v. Kroger Grocery & Baking Co.*, 344 Mo. 127, 125 S.W.2d 75 (1939); *Muza v. Cash Bargain Lumber Co.*, 586 S.W.2d 403, 406 (Mo.App.1979). The nature of this cause of action, therefore, has led courts to require strict proof of each element of the tort. *See* L. Green, Judge and Jury 338 (1930). *See also Higgins v. Knickmeyer-Fleer Realty & Investment Co.*, 335 Mo. 1010, 74 S.W.2d 805 (1934); *Hunter v. Karchmer*, 285 S.W.2d 918 (Mo. App.1955); *Bellington v. Clevenger*, 228 S.W.2d 817 (Mo.App.1950). In a federal circuit court opinion, for example, Justice Washington noted that: "[i]n trials of actions of this nature, it is of infinite consequence to mark with precision, the line to which the law will justify the defendant in going, and will punish him if he goes beyond it." *Munns v. De Nemours*, 17 Fed. Cas. 993, 995 (C.C.D.Pa.1811) (No. 9,926). The Virginia Supreme Court recently espoused this same attitude when it held that such actions "have been circumscribed by

limitations more stringent than those applied to most other tort actions." *Bain v. Phillips*, 217 Va. 387, 228 S.E.2d 576, 581 (1976). Numerous commentators also have expressed this sentiment, including Lord Holt more than a hundred years ago, Martin Newell at the turn of the century, and Prosser and Keeton during our own era. *See* N. Newell, Newell on Malicious Prosecution 21 (1892); W. Prosser & W. Keeton, Prosser & Keeton on the Law of Torts 870–71, 882 (1984). *See also Stewart v. Sonneborn*, 98 U.S. 187, 8 OTTO 187, 25 L.Ed. 116 (1878), *Alexander v. Petty*, 35 Del.Ch. 5, 108 A.2d 575, 577 (1954); *Miller v. Pennsylvania R. Co.*, 371 Pa. 308, 89 A.2d 809, 810 (1952); *Penton v. Canning*, 57 Wyo. 390, 118 P.2d 1002, 1004–05 (1941); 52 Am.Jur.2d *Malicious Prosecution* § 81, at 187–89; 54 C.J.S. *Malicious Prosecution* § 3, at 954. We believe that this public policy coupled with current crime rates mandates that we reexamine the element of malice in a malicious prosecution as it is defined for the jury in our present MAI 16.01.

■ A person suing on a theory of malicious prosecution must plead and prove six elements: (1) the commencement of a prosecution against the plaintiff; (2) the instigation by the defendant; (3) the termination of the proceeding in favor of the plaintiff; (4) the want of probable cause for the prosecution; (5) the defendant's conduct was actuated by malice; and (6) the plaintiff was damaged. S. Greenleaf, II Greenleaf on Evidence §§ 449–59 (2nd ed. 1844). *See also Stafford v. Muster*, 582 S.W.2d 670, 675 (Mo. banc 1979). We focus our attention on the fifth and crucial element of malice; and, because malice also justifies a punitive damage award, we must address the connection between the type of malice necessary to establish liability and that which is necessary to sustain an award of punitive damages.

The word "malice" connotes a culpable mental state, but the term lacks any uniform definition. In a well-researched opinion in 1917, the Arizona Supreme Court observed that "[t]here are different kinds

and degrees of malice as well as the nature of the evidence going to prove its existence." *Griswold v. Horne*, 19 Ariz. 56, 165 P. 318, 323 (1917). Indeed, one eminent scholar commented that the term is so "slippery" that it should be banished from the law. Ames, "How Far an Act May Be A Tort Because of the Wrongful Motive of the Actor," 18 Harv.L.Rev. 411, 422 n. 1 (1905). We have retained the term and, not surprisingly, the different kinds and degrees of malice have often been confused throughout the development of the law in Missouri. The result is that we now utilize a single definition of malice and it is highly questionable whether it properly describes either the malice required to sustain a malicious prosecution or that required to sustain punitive damages in a malicious prosecution.

■ In general, the law recognizes three degrees of malice. First, there is malice in its universal sense as understood in the popular mind, which means "ill will, spite, personal hatred, or vindictive motives." *Peasley v. Puget Sound Tug & Barge Co.*, 13 Wash.2d 485, 125 P.2d 681, 689 (1942). Such malicious conduct is founded in ill will, "and is evidenced by an attempt to vex, injure, or annoy another." *Davis v. Hearst*, 160 Cal. 143, 116 P. 530, 537 (1911). *See also* 54 C.J.S. *Malicious Prosecution* § 41, at 1004. This type of malice is commonly referred to as "malice in fact" or "actual malice."

■ A second degree of malice is malice in its legal sense. The definition of legal malice has a broader meaning than the popularly understood definition of malice in fact. Malice in its enlarged legal sense embraces any improper or wrongful motive—that is, *malo animo. See S.S. Kresge Co. v. Ruby*, 348 So.2d 484, 489 (Ala.1977); *Brodie v. Hawaii Auto Car Deal. Ass'n*, 2 Hawaii App. 316, 631 P.2d 600, 605 (1981), *rev'd on other grounds*, 65 Hawaii 598, 655 P.2d 863 (1982); *Owens v. Kroger Co.*, 430 So.2d 843 (Miss.1983); *Peasley v. Puget Sound Tug & Barge Co.*, *supra*, 125 P.2d at 689. *See generally* 54 C.J.S. *Malicious Prosecution* § 41, at 1004.

Some courts also have included within legal malice conduct which is so reckless or wantonly and willfully in disregard of one's rights that a trier of fact could infer from such conduct bad faith or *malo animo. See e.g., Richter v. Neilson,* 11 Cal.App.2d 503, 54 P.2d 54 (1936); *Hugee v. Pennsylvania R. Co.,* 376 Pa. 286, 101 A.2d 740 (1954); *Lewis v. Williams,* 618 S.W.2d 299 (Tenn.1981); *Yelk v. Seefeldt,* 35 Wis.2d 271, 151 N.W.2d 4 (1967). Although he incorrectly termed it "malice in law", Newell aptly defined this type of malice as something less than malice in fact and "simply ... a general wickedness or intent on the part of a person; a depraved inclination to do harm, or to disregard the rights or safety of mankind generally." W. Newell *supra,* at 239.

 Third, there is "malice in law." This degree of malice is properly defined as a wrongful act done intentionally without just cause or excuse. *See generally* 54 C.J.S. *Malicious Prosecution* § 42, at 1005. The law imputes malice "to a wrongdoer from the *mere* intentional doing of a wrongful act to the injury of another without legal justification or excuse." *Freezer v. Miller,* 163 Va. 180, 176 S.E. 159, 168 (1934). *See also Connelly v. White,* 122 Iowa 391, 98 N.W. 144, 145 (1904). For example,

> [i]f one gives a perfect stranger unaware a blow with a deadly weapon likely to produce death, he does it of malice, because he does it intentionally without just cause or legal excuse. If he maims cattle without knowing whose they are, if he poisons a well of drinking water without knowing who is likely to drink of it, he does it of malice, because it is a wrongful act and done intentionally without any legal justification or excuse. This is the malice of the law—a malice of pleading and proof made necessary by definitions of offenses against the law or the exigencies of the case. It is established by a conclusive legal presumption, and proof of malice in fact is not required.

*Griswold v. Horne, supra,* 165 P. at 323. An all-too-often unrecognized difference exists between this type of malice in law and malice in its legal sense. The former rests upon a legal presumption independent of any proof concerning a defendant's mental state, while the latter requires either direct or indirect proof of a mental state somewhat less culpable than malice in fact. *See generally* L. Frumer & M. Friedman, 4E Personal Injury § 1.02[3] at 31 (1984).

The weight of authority clearly indicates that a malicious prosecution action can be supported only by either actual or legal malice. Malice in law is insufficient. A plaintiff must establish that the defendant acted either with ill will toward the plaintiff or from any other improper motive. Treatise writers are in general agreement that, at the very least, an improper or wrong motive is essential. Justice Holmes, for example, commented upon the relevancy of a defendant's moral condition in such suits:

> Such a limitation would stand almost alone in the law of civil liability. But the nature of the wrong is peculiar, and, moreover, it is quite consistent with the theory of liability here advanced that it should be confined in any given instance to actual wrongdoing in a moral sense.

O. Holmes, The Common Law Tradition 113 (M. Howe ed. 1963). Over one hundred years later, Prosser and Keeton wrote:

> The plaintiff has the burden of proving that the defendant instituted the proceeding "maliciously." This unfortunate word, which has so much vexed the kindred law of defamation, requires no less in the way of definition here. It means something more than the fictious "malice in law" which has been developed in defamation cases as a cloak for strict liability. There must be "malice in fact." At the same time it does not necessarily mean that the defendant was inspired by hatred, spite or ill will; and there is authority that if his purpose was otherwise a proper one, the addition of the incidental fact that he felt indignation or resentment toward the plaintiff will not make him liable. As in the cases of

qualified privilege in defamation, the courts seem to have looked to the primary purpose behind the defendant's action. If he is found to have acted chiefly to give vent to motives of ill will, "malice" is established. But it is found also where his primary purpose was merely something other than the social one of bringing an offender to justice ...

W. Prosser & W. Keeton, *supra*, at 882–83. Other similar expressions may be found concerning the required type of malice.

Ordinarily, in order to constitute malice supporting an action for malicious prosecution, there must be malus animus, denoting that the person who instituted the original proceeding was actuated by wrong motives.

54 C.J.S. *Malicious Prosecution* § 42, at 1004–05. *See also* T. Cooley, A Treatise on the Law of Torts 184 (1879); F. Pollock, A Treatise on the Law of Torts, 183, 392 (1894); 52 Am.Jur.2d *Malicious Prosecution* § 46, at 214. These authorities illustrate that while ill will, hatred or spite *may not be necessary* to establish the cause of action, the plaintiff must prove that the defendant was at least actuated by an improper or wrongful motive.

Decisions from numerous state courts are no less forceful in asserting that more than malice in law is needed to establish the elements of a malicious prosecution. Some courts require actual malice, while other courts hold that malice in its legal sense is sufficient. The Arizona Supreme Court has held that "in this sort of action it is absolutely essential to its existence that malice in fact as distinguished from malice in law be present." *Griswold v. Horne, supra*, 165 P. at 323. The North Dakota Supreme Court has held that legal malice is sufficient to support the action, and then it defined legal malice as "any unjustifiable motive." *Kolka v. Jones*, 6 N.D. 461, 71 N.W. 558, 562 (1897). The highest court of

Virginia has also held that "[t]he malice which is an essential element of an action for a malicious prosecution is *actual* malice, or malice in fact, and its existence must be proven as any other fact." *Freezer v. Miller, supra*, 176 S.E. at 168. The court further defined actual malice as "malus animus, i.e., a wrong motive or purpose." *Id.* 176 S.E. at 169. With the exception of all but a few state courts,[1] including Missouri, the overwhelming majority of decisions require ill will or some improper or wrongful motive. *See e.g., National Security Fire & Casualty Co. v. Bowen*, 447 So.2d 133, 140 (Ala.1983); *Griswold v. Horne, supra; Albertson v. Raboff,* 46 Cal.2d 375, 295 P.2d 405, 410 (1956); *Suchey v. Stiles*, 155 Colo. 363, 394 P.2d 739, 741 (1964); *Smith v. Globe Ford, Inc.*, 39 Conn.Supp. 27, 467 A.2d 1262, 1266 (1983); *Stidham v. Diamond State Brewery, Inc.*, 41 Del. 330, 21 A.2d 283, 285 (1941); *Ammerman v. Newman*, 384 A.2d 637, 640–41 (D.C.1978); *Erp v. Carroll*, 438 So.2d 31, 40 n. 3 (Fla.App.1983); *Iowa Mutual Ins. Co. v. Gulf Heating & Refrig. Co.*, 184 So.2d 705, 706 (Fla.App.1966); *Brodie v. Hawaii Auto Ret. Gas Deal. Ass'n, supra; Berlin v. Nathan*, 64 Ill.App.3d 940, 21 Ill.Dec. 682, 381 N.E.2d 1367, 1372 (1978); *Carbaugh v. Peat*, 40 Ill.App.2d 37, 189 N.E.2d 14, 19 (1963); *Satz v. Koplow*, 397 N.E.2d 1082, 1083 (Ind.App.1979); *Foltz v. Bock*, 89 Kan. 381, 131 P. 587 (1913); *Illinois Central R. Co. v. Anderson*, 206 Ky. 600, 268 S.W. 311, 312 (1925); *O'Connor v. Hammond Police Dept.*, 439 So.2d 558, 561 (La.App.1983); *Coleman v. Kroger Co.*, 371 So.2d 1186, 1189 (La.App.1979); *Glover v. Fleming*, 36 Md.App. 381, 373 A.2d 981, 983 (1977); *Sottile v. DeNike*, 20 Mich.App. 468, 174 N.W.2d 148 (1969); *Owens v. Kroger Co., supra*, at 847; *Harvill v. Tabor*, 240 Miss. 750, 128 So.2d 863, 864–65 (1961); *Miller v. Watkins*, 653 P.2d 126, 131 (Mont. 1982); *Hackler v. Miller*, 79 Neb. 209, 114

---

**1.** *See Meraz v. Valencia*, 28 N.M. 174, 210 P. 225 (1922); *Brown v. Guaranty Estates Corp.*, 239 N.C. 595, 80 S.E.2d 645, 651 (1954); *Eaves v. Broad River Elec. Cooperative, Inc.*, 277 S.C. 475, 289 S.E.2d 414, 416 (1982). An examination of these opinions and their adoption of a malice in

law standard indicates a similar problem presently before this Court. *Cf. Standard v. A.F. Messick Grocery Co.*, 143 N.C. 449, 55 S.E. 815 (1906); *Margolis v. Telech*, 239 S.C. 232, 122 S.E.2d 417 (1961).

N.W. 274 (1907); *Martin v. City of Albany*, 42 N.Y.2d 13, 364 N.E.2d 1304, 396 N.Y.S.2d 612 (1977); *Rogers v. Barbera*, 170 Ohio St. 241, 164 N.E.2d 162, 165 (1960); *Fleet v. May Dept. Stores, Inc.*, 262 Or. 592, 500 P.2d 1054, 1059 (1972); *Hugee v. Pennsylvania R. Co., supra; Curley v. Automobile Finance Co.*, 343 Pa. 280, 23 A.2d 48 (1941); *Nagy v. McBurney*, 120 R.I. 925, 392 A.2d 365, 367–68 (1978); *Huntley v. Harberts*, 264 N.W.2d 497 (S.D. 1978); *Stringer v. Cross*, 564 S.W.2d 121 (Tex.Civ.App.1978); *Creelman v. Svenning*, 1 Wash.App. 402, 461 P.2d 557 (1969); *Consumers Filling Station Co. v. Durante*, 79 Wyo. 237, 333 P.2d 691, 699–700 (1958); *Meyer v. Ewald*, 66 Wis.2d 168, 224 N.W.2d 419, 422 (1974). *See also* Ga.Code § 51–7–2 (1982).

Some of these courts hold that legal malice also encompasses conduct which is "wrongful and willfully done, with a consciousness that it is not according to law or duty." *Wiggin v. Coffin*, 29 Fed.Cas. 1157, 1159 (C.C.D.Me.1836) (No. 17,634). *See also Lunsford v. Dietrich*, 9 So. 308, 310 (Ala.1891); *Nyer v. Carter*, 367 A.2d 1375, 1378–79 (Me.1977); *Kolka v. Jones, supra*, 71 N.W. at 562; *Margolis v. Telech, supra*. Care must be taken to distinguish this type of malice from negligence:

> Malice is distinguishable from mere negligence in that it arises from absence of purpose. The characteristic of negligence is inadvertence or an absence of an intent to injure. This does not imply that the act was done involuntarily or unconsciously, but merely that the person doing it was not conscious that the act constituted a want of reasonable care. If so conscious the act becomes malicious. The books agree that the prosecution need not have been prompted by malevolence or any corrupt design, nor necessarily involve spite or hatred toward the person accused. It is enough if it be the result of any improper or sinister motive and in disregard of the rights of other ..., or if done willfully and purposely ... But to constitute malice there must have been (1) a motive or

purpose, and (2) it must have been an improper one.

*Jenkins v. Gilligan*, 131 Iowa 176, 108 N.W. 237, 238 (1906) (citations omitted). In short, the conduct must be such that a jury could infer and find an improper motive. Another court opined that "[w]hile it is a fact that a willful and wanton disregard for the fact may be the basis for malice, such wanton and willful conduct must be of such a nature and character *as to evince a hostile or vindicative motive*." *Yelk v. Seefeldt, supra*, 151 N.W.2d at 8. (Emphasis added). The defendant's act is deemed improper because the defendant is consciously doing an act which he knows society regards as reprehensible. These opinions, therefore, demonstrate that the requisite legal malice is established when the defendant willfully institutes a criminal proceeding while conscious that such an action is wrong or unlawful. The defendant must either proceed with an improper or wrongful motive or consciously act with such wanton disregard for the rights of others that a jury may, but need not, infer from such conduct an improper motive.

Contrary to the weight of authority, Missouri has retained a malice in law standard for the definition of malice in malicious prosecution actions. "The element of malice in malicious prosecution is defined as the intentional doing of a wrongful act without legal justification. It may be inferred from the absence of probable cause and does not necessarily involve hatred or ill will." *Parthenopoulos v. Maddox*, 629 S.W.2d 563, 571 (Mo.App.1981). *See also Muza v. Cash Bargain Lumber Co.*, 586 S.W.2d 403, 406 (Mo.App.1979); *Palermo v. Cottom*, 525 S.W.2d 758, 765 (Mo.App. 1975). This is essentially the definition found in MAI 16.01:

> The term ["malice"] ["malicious"] ["maliciously"] as used in this [these] instruction[s] does not mean hatred, spite or ill will, as commonly understood, but means the doing of a wrongful act intentionally without just cause or excuse.

Although Missouri has dubbed and titled this definition "legal malice," it is in fact

what we have described as "malice in law." The instruction does not require the jury to find that the defendant acted with an improper purpose. Indeed, this is nothing more than the common generic definition of an intentional tort:

> [i]t is a general rule of the common law that a cause of action arises whenever one person, by an act not in the exercise of a lawful right, causes loss or does damage to another with an intent, either actual or constructive, to produce such harm, without just or lawful excuse or justifiable cause or occasion.

74 Am.Jur.2d, *Torts* § 18, at 635. Prosser and Keeton explain that this definition was intended for use in such cases where a "cloak for strict liability" was intended. W. Prosser & W. Keeton, *supra*, at 882. The two examples are defamation suits and suits for false arrest or imprisonment.[2] The Minnesota Supreme Court has appropriately noted that "[t]he malice which is the essential element of malicious prosecution is not, like the malice essential in libel, slander, and false imprisonment, a mere fiction of the law; *it is a state of mind to be proven as a fact*." *Hanowitz v. Great Northern Ry. Co.*, 122 Minn. 241, 142 N.W. 196, 197 (1913) (emphasis added). Not surprisingly, therefore, the few states, including Missouri, adopting this malice in law standard for malicious prosecution actions have been singled out for criticism. *See* 54 C.J.S. *Malicious Prosecution*, § 42, at 1005; *Freezer v. Miller, supra,* 176 S.E. at 168, n. 8.

The malice in law standard in Missouri can be traced to two early decisions *Goetz v. Ambs*, 27 Mo. 28 (1858) and *Hill v. Palm*, 38 Mo. 13 (1866). *Goetz* involved awarding punitive damages in an assault case, and the Court equated malice with an intentional tort. *Goetz v. Ambs, supra*, at 33. In *Hill*, the Court without reasoning or discussion approved an instruction in a mali-

cious prosecution action which was a combination of malice in fact and malice in law, thereby permitting recovery to be based on the lesser, malice in law. The instruction was as follows:

> There are two kinds of malice; malice in fact, and malice in law. The former, in common acceptation, means ill-will against a person; the latter, a wrongful act done intentionally. If, therefore, the jury believes from the evidence that the defendant caused plaintiff to be arrested for larceny ..., and that the defendant was moved thereto by ill-will against the plaintiff, or that the prosecution was wrongfully instituted by the defendant ... the jury must find for the plaintiff.

*Hill v. Palm, supra,* at 15. The *Hill* instruction was followed in *Sharpe v. Johnston*, 59 Mo. 557 (1875). In *Sharpe*, the jury was instructed that "[m]alice means a wrongful act done intentionally without legal justification or excuse." *Id.* at 571.

The Court in these early cases erroneously assumed that the definition of malice could be culled from defamation cases where malice served as a cloak for strict liability. The only citation supporting the instruction in *Goetz* is to a federal circuit court opinion. *Goetz v. Ambs, supra*, at 33. In that federal decision, however, Justice Story was interpreting a federal criminal statute, and he relied heavily upon the language in *Bromage v. Prosser*, 4 Barn & C. 247 (1825). *United States v. Taylor*, 28 Fed.Cas. 31 (D.Mass.1837) (No. 16,442). *Bromage* involved a defamation action and Judge Bayley held that malice was implied from the publication of false words in a case not involving privileged communications. *Bromage v. Prosser, supra,* at 256. "[I]f the matter is slanderous, malice is implied, it is sufficient to prove publication; the motive of the party publishing are never gone into." *Id.* at 256. According to Bayley, this type of malice was defined as

---

2. *See generally* Harper, "Malicious Prosecution, False Imprisonment and Defamation," 15 Tex.L. Rev. 157, 164–65 (1937); 54 C.J.S. *Malicious Prosecution* § 41, at 1004. *See e.g., Griswold v. Horne, supra, David v. Hearst, supra; Hudson v. Garner*, 22 Mo. 423, 433 (1856); *Helming v.*

Adams, 509 S.W.2d 159 (Mo.App.1974); *McGill v. Walnut Realty Co.*, 235 Mo.App. 874, 148 S.W.2d 131 (1941); *Ullrich v. New York Press Co.*, 23 Misc.Rep. 169, 50 N.Y.S.Supp. 788 (1898).

"a wrongful act, done intentionally, without just cause or excuse." *Id.* at 255. In *Sharpe*, the prevailing party supported the malice instruction by a citation to *Buckley v. Knapp*, 48 Mo. 152, 158 (1871). *Sharpe v. Johnston, supra*, at 561. *Buckley*, however, involved the same kind of action as *Bromage* and the Court affixed malice where there was a mere publication of false words. *Knapp, supra*, at 161. *See also Barber v. St. Louis Post Dispatch*, 3 Mo.App. 377, 386 (1877).

The majority of Missouri cases involving malicious prosecution merely recite this malice in law standard without describing the state of mind sufficient to sustain the cause of action. *See e.g., Burris v. North*, 640 Mo. 426 (1877); *Callahan v. Caffarata*, 39 Mo. 136, 143–44 (1866); *Brant v. Higgins*, 10 Mo. 451 (1847). The opinions generally acknowledge that malice is an essential element of the tort. *See e.g., Frampton v. Bieber*, 204 S.W. 728 (Mo. 1918); *Sharpe v. Johnston, supra*, at 575; *Casperson v. Sproule*, 39 Mo. 39, 42–43 (1866); *Lalor v. Byrne*, 51 Mo.App. 578, 580 (1892); *McGarry v. Missouri Pacific Ry. Co.*, 36 Mo.App. 340, 346 (1889). They most frequently find malice in the lack of probable cause rather than in the actor's state of mind.[3] *See e.g., Hoene v. Associated Dry Goods Corp.*, 487 S.W.2d 479 (Mo.1972); *Keenoy v. Sears Roebuck &*

*Co.*, 642 S.W.2d 665 (Mo.App.1982); *Hupp v. North Hill Lincoln-Mercury, Inc.*, 610 S.W.2d 349 (Mo.App.1980); *Muza v. Cash Bargain Lumber Co., supra; Palermo v. Cottom, supra; Boquist v. Montgomery Ward & Co.*, 516 S.W.2d 769 (Mo.App. 1974); *Witt v. Kroger Co.*, 392 S.W.2d 15 (Mo.App.1965).

Some opinions, however, suggest that the state of mind embodied in a legal malice standard is required to establish liability for malicious prosecution. A number of cases suggest implicitly that the plaintiff must establish that the defendant was actuated by either ill will or any improper motive. *See e.g., Randol v. Kline's Inc.*, 322 Mo. 746, 18 S.W.2d 500, 507 (1929); *Peck v. Chouteau*, 91 Mo. 138, 3 S.W. 577, 580 (1887); *Stocking v. Howard*, 73 Mo. 25, 27 (1880); *Pritchett v. Northwestern Mutual Life Ins. Co.*, 228 Mo.App. 661, 73 S.W.2d 815, 819 (1934); *Van Nort v. Van Nort*, 16 S.W.2d 643, 645 (Mo.App.1929); *Christian v. Hanna*, 58 Mo.App. 37, 43 (1894); *Trauerman v. Lippincott*, 39 Mo. App. 478, 486–87 (1890); *Staley v. Turner*, 21 Mo.App. 244, 251 (1886); *Meysenberg v. Engelke*, 18 Mo.App. 346, 349–50 (1885). One opinion suggests that malice is established when the defendant acts recklessly, unreasonably and in gross disregard for one's rights when instituting a proceeding.

---

**3.** The rationale behind these decisions is that the facts which establish the lack of probable cause *may* also allow the jury to draw the inference that the defendant had a culpable mental state. *See e.g., Lambert v. Sears, Roebuck & Co.*, 280 Or. 123, 570 P.2d 357, 363 (1977). Unfortunately, a certain amount of confusion surrounds the statement that "malice may be inferred from the lack of probable cause," as Justice Linde of the Oregon Supreme Court explains:

> I have no doubt that the same evidence may prove that a defendant lacked probable cause to prosecute the plaintiff and also acted with malice. But it is a different proposition that the jury may infer malice "from the lack of probable cause," when the latter conclusion may arise from non-malicious causes such as negligence. While the second phrasing [that the lack of probable cause may be sufficient evidence of malice] may have originated merely as elliptical shorthand for the first, its effect is to invite the jury to find "malice" whenever they find that the defendant initiat-

ed the prosecution of plaintiff without probable cause.

*Id.* 570 P.2d at 365 (Linde, J., concurring). *See also Wills v. Noyes*, 29 Mass. (12 Pick) 324, 326 (1832). A number of Missouri cases suggest that malice may be inferred from a lack of probable cause; these opinions, however, do not accurately reflect the law that malice may be inferred from the *facts* which establish the lack of probable cause:

> [M]alice is not an inference of law from the want of probable cause. Malice, however, need not be proved by direct and positive testimony, but may be inferred from the facts which go to establish the want of probable cause; and this is all that is meant when it is said that malice may be inferred from the want of probable cause.

*Sharpe v. Johnston, supra*, at 575–76. *See also Christian v. Hanna, infra*, at 43. We, therefore, discourage courts from using the "elliptical" phrase that malice may be inferred from a want of probable cause.

*Foster v. Chicago, B & Q.R. Co.*, 321 Mo. 1202, 14 S.W.2d 561, 570 (1928).

Our courts, after having the case submitted on MAI 16.01 or one of its predecessors, in many instances have justified the finding of the jury by saying that the language in MAI 16.01 reflects the commonly expressed definition of willfulness. In a case interpreting the phrase "the intentional doing of a wrongful act without just cause or excuse," the Court explained that the term "intentionally done" refers to the fact that the "defendant knew that it was wrong, knew that he had no just cause or excuse for so doing, and hence did it willfully and wantonly and in reckless disregard of the rights of the other party." *McNamara v. St. Louis Transit Co.*, 182 Mo. 676, 81 S.W. 880, 882 (1904). This same interpretation of the language of MAI 16.01 exists in numerous other cases. *See e.g., Jones v. Phillips Petroleum Co.*, 186 S.W.2d 868, 876 (Mo.App.1945); *Pritchett v. Northwestern Mut. Life Ins. Co., supra,* 73 S.W.2d at 819; *Christian v. Hanna, supra,* at 43; *Trauerman v. Lippincott, supra,* at 486. The concept of willfulness cannot properly be read into the language in MAI 16.01 post trial because nothing in the instruction requires that the defendant act willfully. *See generally Freezer v. Miller, supra,* 176 S.E. at 168–69. Decisions construing the language in MAI 16.01 to include a willfulness component seem all the more questionable in light of other cases suggesting that the legal malice standard purportedly reflected in the instruction does not require that the defendant acted willfully or wantonly. *See e.g., Brown v. Sloan's Moving & Storage Co.*, 296 S.W.2d 20, 26 (Mo.1956).

 The case at bar leaves us no choice but to clarify the element of malice in malicious prosecution actions. In so doing we resolve the misunderstanding that has plagued this state's law for many years. We can no longer in good conscience sanction the use of MAI 16.01. The instruction reflects a definition of malice in law and does not indicate to the jury that the defendant had to have acted with the requisite culpable mental state. In the past the jury has been told that malice exists when the defendant does a "wrongful act intentionally without just cause." The "wrongful act" "without just cause" is committed when the defendant acts without probable cause, an entirely separate element of the tort. All that has remained for the jury to determine is that the defendant act "intentionally." To a jury this suggests, as counsel for respondent argued in closing argument, that the initiation of the prosecution was "not an accident." This fails to recognize the distinction between intention and malice. Intention refers to the defendant's intent to commit the act which causes the harm. *See e.g., Cover v. Phillips Pipe Line Co.*, 454 S.W.2d 507, 512–13 (Mo.1970). The type of intent embraced in the concept of malice is quite different:

> The tort of malicious prosecution is an intended wrong, not only in the sense that the defendant, by his deliberate and voluntary act, invaded the plaintiff's interest but in the sense that he intended the wrongful result. This means that he must have committed the acts complained of primarily for the purpose of harming the plaintiff.

F. Harper & F. James, Jr., I The Law of Torts § 4, at 320 (1956). There must be intent to cause the harm and not merely to commit the act which causes the harm. The effect of MAI 16.01 is to place a premium on the absence of probable cause thereby relegating malice to a mere legal fiction, a legal inference or presumption. This is contrary to the weight of authority and we believe was never intended by our prior decisional law.

MAI 16.01 is further misleading because it states that malice "does not mean hatred, spite or ill will." Hatred, spite or ill will is necessary to establish malice in fact. Even courts rejecting a malice in fact standard, however, hold that hatred, spite or ill will does not *necessarily* have to be proven. *See e.g., Lampert v. Judge & Dolph Drug Co.*, 238 Mo. 409, 141 S.W. 1095, 1098 (1911); *Palermo v. Cottom, supra,* at 765;

*Beatty v. Puritan Cosmetic Co.*, 236 Mo. App. 807, 158 S.W.2d 191 (1942); *Christian v. Hanna, supra*, at 43. *See also Iowa Mutual Ins. Co. v. Gulf Heating & Refrig. Co.*, 184 So.2d 705, 706 (Fla.App.1966); *Stanford v. A.F. Messick Grocery Co., supra*, 55 S.E. at 817; *Huntley v. Harberts, supra*, at 501. By informing the jury that malice does *not mean* hatred, spite or ill will instead of informing the jury that malice does *not necessarily mean* hatred, spite or ill will, MAI 16.01 goes one step further in suggesting to a jury that mere intent to do an act that the law subsequently classifies as wrongful is sufficient.

■ In *Haswell v. Liberty Mutual Insurance Co.*, 557 S.W.2d 628 (Mo. banc 1977), this Court discussed adopting the Restatement definition of malice for malicious prosecution of civil proceedings. The passing years, the ever increasing problem of crime, and the need for effectively carrying out the public policy of urging citizens to aid in the prosecution of crime now mandates that we reach a different result with respect to malicious prosecution actions arising from a criminal proceeding. The Restatement of Torts (Second) § 668 (1965) provides: "To subject a person to liability for malicious prosecution, the proceedings must have been initiated primarily for a purpose other than that of bringing an offender to justice." This definition, while not requiring proof of malice in fact, will require proof of legal malice and bring Missouri back into step with the majority of jurisdictions.

Having held that MAI 16.01 improperly defines the element of malice in malicious prosecution actions, MAI 23.07 (1981) should be modified so as to incorporate the Restatement definition.[4] We believe that respondent should be afforded a new trial

to determine whether or not appellant acted with the degree of malice necessary to sustain the cause of action. *Zimmerman v. Associates Discount Corp.*, 444 S.W.2d 396 (Mo. banc 1969).

### III

■ Two reasons suggest that MAI 16.-01 can no longer be used to instruct the jury on punitive damages in a malicious prosecution action.[5] First, MAI 16.01 is inadequate to instruct the jury on even the required mental state for liability. A higher degree of malice should be required to justify punitive damages. Second, the weight of authority indicates that actual malice or something akin to actual malice is generally necessary to justify a punitive damage award in malicious prosecution cases.

Under current Missouri law, the malice in law standard for liability in a malicious prosecution also is used to satisfy the type of conduct necessary for punitive damages. *Ruth v. St. Louis Transit Co.*, 98 Mo.App. 1, 71 S.W. 1055, 1060 (1903), and *Carp v. Queen Ins. Co.*, 203 Mo. 295, 101 S.W. 78, 97 (1907), suggested that actual malice was needed to support a punitive damage award in a malicious prosecution action. In *Foster v. Chicago B. & Q. R. Co., supra*, 14 S.W.2d at 572, however, the Court held that the type of malice necessary for liability was also sufficient to justify punitive damages. *See Dye v. Loewer*, 94 S.W.2d 948, 953 (Mo.App.1936). The Court apparently based its decision upon a Missouri case involving punitive damages in another form of action and upon a United States Supreme Court case. It should be noted that the United States Supreme Court case relied upon in *Foster* required some willful

---

**4.** The second paragraph of MAI 23.07 should be amended as follows: "Second, in so doing defendant acted primarily for a purpose other than that of bringing an offender to justice and acted without reasonable grounds, and." The term "reasonable grounds" still requires definition. MAI 16.05 (1981).

**5.** The jury was instructed under MAI 10.01 that if appellant's conduct was "willful, wanton, or

malicious," then it could also assess punitive damages against appellant. The Notes on Use to MAI 10.01 indicate that "malicious" must be defined for the jury, and that definition is found in MAI 16.01. Consequently, because the definition of malice described by MAI 16.01 is insufficient to justify awarding punitive damages, we again focus our attention on MAI 16.01.

conduct or reckless indifference to the rights of others, and "[t]he tort is aggravated by the evil motive, and on this rests the rule of exemplary damages." *Milwaukee & S.P.R. Co. v. Arms,* 91 U.S. 489, 493, 1 OTTO 489, 493, 23 L.Ed. 374 (1876). The misapplied rule announced in *Foster* found its way into the mainstream of our law without a full and accurate consideration of the issue.

The standard expressed by MAI 16.01 and approved in *Foster* conflicts with the prevailing view that punitive damages should not be awarded in a malicious prosecution action unless the defendant's mental state reflects something akin to actual malice. Some courts, of necessity, demand the presence of actual malice because of their requirement that actual malice is necessary to establish liability. Commentators generally observe that to justify punitive damages there must be "personal ill will or oppressive conduct in the prosecution." W. Prosser & W. Keeton, *supra,* at 888. Another source suggests that there must be actual malice "or where the proceedings complained of were commenced under circumstances of oppression, wantonness, or a reckless disregard of plaintiff's rights." 54 C.J.S. *Malicious Prosecution* § 114, at 1106.

Many courts have held that actual malice is "required to support an award of punitive damages in an action for malicious prosecution." Annot., 94 A.L.R.3d 791, 795 (1979). One observer notes that "[m]any states require proof of malice more in the lay sense of personal hatred, spite or ill will." G. Douthwaite, Jury Instructions on Damages in Tort Actions 437 (1981). Courts either require a higher degree of culpability before awarding punitive damages than they do for liability or they require more stringent proof of malice for punitive damages than for liability. *See e.g., Adams v. Whitfield,* 290 So.2d 49 (Fla. 1974); *Jones v. Gwynne,* 64 N.C.App. 51,

306 S.E.2d 574 (1983), *petition granted Jones v. McDonald Corp.,* 310 N.C. 153, 311 S.E.2d 292 (1984); *Stanford v. A.F. Messick Grocery Co., supra,* 55 S.E. at 817–18; *Rogers v. Barbera, supra,* 164 N.E.2d at 164–65; *Lee v. Southland Corp.,* 219 Va. 23, 244 S.E.2d 756, 759 (1978); *Giant of Virginia, Inc. v. Pigg,* 207 Va. 679, 152 S.E.2d 271 (1967). *In First National Bank of St. Mary's v. Todd,* 283 Md. 251, 389 A.2d 371 (1978), the Maryland court acknowledged that the majority rule is that actual malice was necessary to justify awarding punitive damages. *Id.* 389 A.2d at 373–74. *See also Rizza v. Gill,* 24 Conn. Sup. 256, 189 A.2d 794 (1963); *Ross v. Kerr,* 30 Idaho 492, 167 P. 654, 656 (1917); *Nardelli v. Stamberg,* 44 N.Y.2d 500, 406 N.Y.S.2d 443, 377 N.E.2d 975 (1978); *Sparrow v. Vermont Savings Bank,* 95 Vt. 29, 112 A. 205, 207 (1921); *McFarland v. Skaggs Co., Inc.,* 678 P.2d 298, 302–04 (Utah 1984). It should also be noted that a number of jurisdictions indirectly require actual malice in malicious prosecutions through their general policy of requiring actual malice for all punitive damage awards.[6]

 MAI 16.01 does not express adequately the degree of culpability required for punitive damages in malicious prosecution cases. The public policy surrounding malicious prosecutions dictates that we follow the majority rule that actual malice is required for punitive damages in a malicious prosecution action. We believe that the definition of malice set forth in the treatise co-authored by our brother Blackmar articulates the correct standard and suggests the form of a proper instruction: "An act or a failure to act is 'maliciously' done, if prompted or accompanied by ill will, or spite, or grudge, either toward the injured person individually, or toward all persons in one or more groups or categories of which the injured person is a mem-

---

6. *See generally* A.B.A., Model Jury Instructions For Business Tort Litigation 34 (1980); J.D. Ghiardi & L.J. Kircher, Punitive Damages: Law and Practice § 5.04, p. 18 (1984); W. Prosser & W. Keeton, *supra,* at 10–11; K. Redden, Punitive Damages (1980); L.A. Stein, Damages and Recovery: Personal Injury and Death Action 369 (1972); 25 C.J.S. *Damages* § 123, at 1141–43. *See also* Restatement of Torts (Second) § 908.

ber." E. Devitt & C. Blackmar, 3 Federal Practice and Instructions § 85.11, at 121 (3rd ed. 1977).

To the extent that either our prior cases or MAI 16.01 conflict with the degrees of malice we have found necessary to support malicious prosecution and punitive damages therein, they can no longer be followed. The need to encourage citizen assistance and participation in the enforcement of our criminal laws compels this long overdue reexamination of the law of malicious prosecution.

The cause is reversed and remanded for retrial consistent with this opinion.

HIGGINS, BILLINGS and DONNELLY, JJ., concur.

BLACKMAR, J., concurs in result in separate opinion filed.

RENDLEN, C.J., and GUNN, J., dissent in separate opinions filed.

BLACKMAR, Judge, concurring in result.

I agree that the judgment should be reversed and the case remanded for new trial.

Judge Welliver soundly traces the history of malicious prosecution actions in Missouri, and convincingly demonstrates that the instruction approved as MAI 16.01, proceeding from the law applied in defamation cases, "does not require the jury to find that the defendant acted with an improper purpose." I agree that more rigorous standard should be applied to malicious prosecution cases.

The extensive quotations in the principal opinion simply show that other courts have struggled with the problems inherent in suits for malicious prosecution and related actions, but give very little guidance to counsel as to the kind of instruction which will be approved. The several expressions are not wholly consistent. Inasmuch as this Court freely prescribes instructions to be used in civil cases, I believe that we should do so in this one. The Court, with the help of the MAI Committee, may of course make future revisions and amendments as may be necessary or desirable.

## I.

If Judge Gunn is correct in his conclusion that plaintiff failed to make a submissible case under the presently prevailing law there would be no need to go into detail about appropriate instructions for future cases. I am inclined to believe, however, that the jury could have found that the defendant's agents led the prosecutor to believe that they could produce evidence to support charges against each of the seven suspects, with reference to their individual tool boxes, when the agents knew that the tools had been commingled before any inventory was taken. Prosecutor, now judge, Hamilton testified as follows:

CROSS–EXAMINATION

Q Okay. What information was it that they had given you for probable cause to believe that Robert Sanders and the other 6 crew members had committed the crime of attempted theft?

A Well, they indicated that the tools from the tool box that had been broken into were found in the gang number 52 gang box and also in the individual boxes in that gang box. And these were the 7 individuals whose names were given to me as being on crew number 52.

\* \* \* \* \* \*

REDIRECT EXAMINATION

Q Mr. Hamilton, if there had been stolen tools in each of the individual tool boxes, you could have proceeded with the trial and prosecuted them without confessions; isn't that true?

\* \* \* \* \* \*

A If there had been stolen tools that were identifiable in each of the individual tool boxes, I think that's correct.

Q You could have proceeded and then you wouldn't have needed the confessions?

A That's right.

The portions of the witness's examination quoted by Judge Gunn do not destroy the effect of this testimony.

There would remain, under the new standard proposed in the principal opinion, the question of the intent of the defendant's agents. I agree with the statement in the principal opinion that "conduct which is so reckless or wantonly and willfully in disregard of one's rights that a trier of fact could infer from such conduct bad faith or *malo animo*" is within the concept of legal malice. The plaintiff should have the opportunity for a new trial under the revised standard. There is also the possibility of additional evidence, and of argument about the permissible inferences from all the evidence directed to the revised standard.

## II.

Although I do not disagree with the statement in Restatement of Torts (Second) § 668 (1965), that "To subject a person to liability for malicious prosecution, the proceedings must have been initiated primarily for a purpose other than that of bringing an offender to justice," this statement hardly serves as a definition of malice and I do not believe that it should be the subject of a verdict-directing instruction or an essential definition. The instructions, rather, should speak in affirmative terms as to what the plaintiff must show. Section 668 speaks of the conduct which will not give rise to liability but is silent as to the showing which the plaintiff must make. I believe that it would serve the purpose of revised Missouri law as enunciated in the principal opinion if MAI 23.07 were left intact and if an instruction in the following terms were substituted for the required definition of "maliciously," now found in MAI 16.01, in malicious prosecution cases:

The term "maliciously" as used in this (these) instruction(s) means acting intentionally with an improper or wrongful motive, or consciously acting with wanton disregard for the rights of others.

Just as with MAI 16.01, the definition could be built into MAI 23.07 or made the subject of a separate instruction.

If this were done then juries would be appropriately instructed as to the mental state required of the defendant. No longer would we have a situation in which the defense of malice "does not indicate to the jury that the defendant had to have acted with the requisite culpable mental state." There may be speculation regarding the appropriateness of the continued use of MAI 16.01 in other actions in which malice is in issue. It would be inappropriate for us to extend our present holding to cases other than malicious prosecution cases, but counsel might consider a conservative approach in the definition of malice, in possibly anticipating further reexamination of the prevailing standard.

## III.

I also agree that there is a need to modify the present MAI 10.01 as to the allowance of punitive damages in malicious prosecution cases. Although it might have been thought that a verdict for the plaintiff in a malicious prosecution case necessarily connoted entitlement to punitive damages, in the discretion of the jury, there is clear precedent for a contrary holding in *Rustici v. Weidemeyer*, 673 S.W.2d 762 (Mo. banc 1984), which held that a defendant might recover actual damages in a claim for false arrest without being entitled to submit punitive damages.

The instruction recommended in the principal opinion[1] is unduly restrictive, and does not give plaintiffs the alternatives, found in the model from which it was taken, of demonstrating that the defendant's act was "wantonly" or "oppressively" done. I would hesitate to hold that a plaintiff must necessarily demonstrate "personal hatred, spite or ill will." The focus rather should be on a purpose of causing harm. I would commend for malicious prosecution cases an instruction in lieu of the present MAI 16.01, in the following language:

---

1. 3 Devitt and Blackmar, Federal Jury Practice and Instructions, 3d Ed., § 85.11.

If you find the issues in favor of plaintiff, and if you believe the conduct of defendant as submitted in Instruction Number ＿＿ (here insert number of plaintiff's verdict directing instruction) was willful or wanton and was wrongfully done for the purpose of causing injury, then in addition to any damages to which you find plaintiff entitled under Instruction Number ＿＿ (here insert number of plaintiff's damage instruction), you may award plaintiff an additional amount as punitive damages in such sum as you believe will serve to punish defendant and to deter him and others from like conduct.

This plaintiff, under the evidence, should have the opportunity to submit the issue of punitive damages under the revised instruction. I cannot say that a jury could not find a wrongful intent to cause injury.

For the reasons stated, I concur in the result reached by the principal opinion.

Inasmuch as these views do not commend the support of a majority of the Court, counsel will have to proceed as best they can in the framing of instructions, with no assurance my suggestions will be ultimately approved. This task is difficult when counsel are not required to make specific objections to the substance of instructions, and so lawyers will have to get along as best they can in the position in which the majority opinion leaves them.

RENDLEN, Chief Justice, dissenting.

I respectfully dissent and would reverse the judgment of the trial court for the reasons set forth in the dissenting opinion of Judge Gunn. However, I feel it important to provide guidance for the Bench and Bar in this and similar cases and accordingly if retrial is necessary I subscribe to the jury instruction forms suggested in the separate opinion of Judge Blackmar concurring in result.

GUNN, Judge, dissenting.

On the facts of the case, I would reverse the judgment.

As the majority opinion recites, the second element of a cause for malicious prosecution is the instigation of proceedings by the defendant. To impose liability, the institution of prosecution must be in the form of some affirmative action by way of advice, encouragement, pressure, or otherwise. *Palermo v. Cottom*, 525 S.W.2d 758, 763 (Mo.App.1975). There is no liability for merely reporting the truth, *Rustici v. Weidemeyer*, 673 S.W.2d 762, 767 (Mo. banc 1984), or merely giving information which leads to a prosecution. *Palermo v. Cottom, supra.* That is what happened here.

An examination of the record in the light most favorable to the plaintiff leads to the same conclusion as expressed in Judge Flanigan's concurring opinion when the case was before the Southern District: "There is nothing in the record to indicate that either Warblow or Heers bore an actual hatred or malice towards Sanders and it is doubtful that even a most charitable view of the evidence would support a finding that either of them intentionally lied to the prosecutor." There is no evidence that Warblow or Heers acted for any purpose other than that of bringing to justice those responsible for the taking of missing tools. Defendant must necessarily rely on his witness, Prosecuting Attorney Hamilton. Hamilton indicated that he misinterpreted or misunderstood some of the information given him by defendant. The crucial misunderstanding concerned the ability of defendant to provide the prosecutor with an inventory of the specific stolen tools, indicating from which individual tool box each tool was recovered. Hamilton subsequently learned that this was not possible for two reasons. First, a number of the tools could not be identified with any precision. Second, defendant had placed all the tools from each crew member's tool box into a single large pile, thereby foreclosing the possibility of an inventory from each worker's tool box. The prosecutor testified that he was not intentionally misled concerning these facts:

Q. Based upon what you were told then and what you later learned through

the various aspects of the investigation you conducted, were the facts as given you on December 20 by Mr. Warblow and Mr. Heers substantially correct?

. . . .

A. The facts were substantially correct.

Q. Okay. Now, you don't feel then, Mr. Hamilton, that you were misled in any way by the facts that were given you?

A. No, I don't think I was intentionally misled. I think I misinterpreted some things.

Q. Well, any misinterpretation was on your part and not on the basis of what they told you?

A. All I can say is what they told me. And my interpretation was something different than we later found the facts to be.

Q. Well, but that—any misinterpretation of that kind would have been misinterpretation on your part and not on what they told you; —

A. That's correct.

He testified further as follows:

Q. Were you able to do—did they indicate they wanted something done, if possible?

A. Well, yes, they were concerned about the matter.

Q. What else, then, did you tell them?

A. I indicated that based on what they had told me—the information that they had given me, that charges for attempted stealing—that we did have probable cause for that.

. . . .

Q. Okay. Now, at any time in this, Mr. Hamilton, was there any urging or pressing or anything of that kind from the Daniel's people for you to file these charges?

A. No. There was concern, obviously, but it was my decision to file the charges.

Q. You understood they wanted something done?

A. Right.

Q. But did you understand that they wanted it done within the framework of the law?

A. That's my understanding.

Q. And they didn't ask you to overreach or go ahead with something that you didn't feel should be done?

A. No, it's a good thing that they didn't.

Q. Okay. Why do you say that?

A. I wouldn't have done it under those circumstances at all.

The strongest inference possible from all the witnesses is that defendant's employees may have unintentionally contributed to a misunderstanding on the part of the prosecutor concerning the facts surrounding the theft. Such conduct is insufficient to make a case for malicious prosecution.

The following statement from *La Font v. Richardson*, 119 S.W.2d 25 (Mo.App.1938), is appropriate: "when it is shown that the prosecuting witnesses consult the prosecuting attorney in good faith, and communicate to him all the ascertainable facts, and acting on his advice institute the criminal proceedings ... they should be exonerated." *Id.* at 29. This language pertains to the instant case. Here, it was the prosecutor who suggested that Herrs and Warblow sign the blank complaint. The defendants were not the parties who initially suggested the institution of proceedings. They had only sought a search warrant to aid in the solution of the crimes of theft. Their suggestion was rejected by the prosecutor. Thus, there is no issue of probable cause confronting this Court. *See Moad v. Pioneer Finance Co.*, 496 S.W.2d 794 (Mo. 1973) in which Judge Higgins gives full explanation to the essential element of probable cause in malicious prosecution and finds, *inter alia*, that mere dismissal of a complaint does not create "any inference of want of probable cause" nor rebut the prima facie case of probable cause. *Id.* at 799.

I cannot translate the prosecutor's suggestion of prosecution and subsequent dismissal of charges into sufficient evidence

to support an action of malicious prosecution.

The sum and substance of the facts of this case lead to the plain and single conclusion that there is no evidentiary support for a malicious prosecution action.

Additionally, in this case, the definition of "malice" makes no difference. There simply was no malice here by any definition.